WILMINGTON AND WELDON RAILROAD COMPANY v. KING,
EXECUTOR.

1. Contracts made during the war in one of the Confederate States, payable in
Confederate currency, but not designed in their origin to aid the insurrec-
tionary government, are not, because thus payable, invalid between the
parties.

2. In actions upon such contracts, evidence as to the value of that currency at
the time and in the locality where the contracts were made is admissible.

3. A statute of North Carolina of March, 1866, enacting that in all civil actions
" for debts contracted during the late war, in which the nature of the obli-
gation is not set forth, nor the value of the property for which such debts
were created is stated, it shall be admissible for either party to show on the
trial, by affidavit or otherwise, what was the consideration of the contract,
and that the jury, in making up their verdict, shall take the same into con-
sideration, and determine the value of said contract in present currency in
the particular locality in which it is to be performed, and render their verdict
accordingly," in so far as the same authorizes the jury in such actions, upon
the evidence thus before them, to place their own estimate upon the value
of the contracts, instead of taking the value stipulated by the parties, im-
pairs the obligation of such contracts, and is, therefore, within the inhibi-
tion upon the State of the Federal Constitution. Accordingly, in an action
upon a contract for wood sold in that State during the war, at a price pay-
able in Confederate currency, an instruction of the court to the jury, that
the plaintiff was entitled to recover the value of the wood without reference
to the value of the currency stipulated, was erroneous.

ERROR to the Supreme Court of the State of North Carolina.
Submitted on printed argument by *Mr. J. M. Carlisle* and
*Mr. J. D. McPherson* for the plaintiff in error.  No counsel
appeared for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The contract between the defendant and the plaintiff's
testatrix, upon which the present action was brought, was
made in North Carolina during the war.  By its terms, the
wood purchased by the railroad company was to be paid for
in Confederate currency.  Contracts thus payable, not designed
in their origin to aid the insurrectionary government, are not
invalid between the parties.  It was so held in the first case
in which the question of the validity of such contracts was
presented, — that of *Thorington* v. *Smith*, 8 Wall. 1, — and the
doctrine of that case has been since affirmed in repeated in-

stances. The treasury-notes of the Confederate government, at an early period in the war, in a great measure superseded coin within the insurgent States, and, though not made a legal tender, constituted the principal currency in which the operations of business were there conducted. Great injustice would, therefore, have followed any other decision invalidating transactions otherwise free from objection, because of the reference of the parties to those notes as measures of value. *Hanauer* v. *Woodruff*, 15 Wall. 448; and the *Confederate Note Case*, 19 id. 556.

But as those notes were issued in large quantities to meet the increasing demands of the Confederacy, and as the probability of their ultimate redemption became constantly less as the war progressed, they necessarily depreciated in value from month to month, until in some portions of the Confederacy, during the year 1864, the purchasing power of from twenty-one to upwards of forty dollars of the notes equalled only that of one dollar in lawful money of the United States. When the war ended, the notes, of course, became worthless, and ceased to be current; but contracts made upon their purchasable quality existed in large numbers throughout the insurgent States. It was, therefore, manifest, that, if these contracts were to be enforced with any thing like justice to the parties, evidence must be received as to the value of the notes at the time and in the locality where the contracts were made; and, in the principal case cited, such evidence was held admissible. Indeed, in no other mode could the contracts as made by the parties be enforced. To have allowed any different rule in estimating the value of the contracts, and ascertaining damages for their breach, would have been to sanction a plain departure from the stipulations of the parties, and to make for them new and different contracts.

In the case at bar, the State court of North Carolina declined to follow the rule announced by this court, and refused to instruct the jury that the plaintiff was entitled to recover only the value of the currency stipulated for the wood sold, and instructed them that he was entitled to recover the value of the wood, without reference to the value of that currency. This was nothing less than instructing them that they might put a different value upon the property purchased from that placed

by the parties at the time. In this ruling the court obeyed a statute of the State, passed in March, 1866, which enacted, " that in all civil actions which may arise in courts of justice for 'debts contracted during the late war, in which the nature of the obligation is not set forth, nor the value of the property for which such debts were created is stated, it shall be admissible for either party to show on the trial, by affidavit or otherwise, what was the consideration of the contract; and the jury, in making up their verdict, shall take the same into consideration, and determine the value of said contract in present currency in the particular locality in which it is to be performed, and render their verdict accordingly."

This statute, as construed by the court, allowed the jury to place their own judgment upon the value of the contract in suit, and did not require them to take the value stipulated by the parties. A provision of law of that character, by constituting the jury a revisory body over the indiscretions and bad judgments of contracting parties, might in many instances relieve them from hard bargains, though honestly made upon an erroneous estimate of the value of the articles purchased, but would create an insecurity in business transactions which would be intolerable. It is sufficient, however, to say that the Constitution of the United States interposes an impassable barrier to such new innovation in the administration of justice, and with its conservative energy still requires contracts, not illegal in their character, to be enforced as made by the parties, even against any State interference with their terms.

The extreme depreciation of Confederate currency at the time the wood, which is the cause of the suit, was purchased, gives a seeming injustice to the result obtained. But, until we are made acquainted with all the circumstances attending the transaction, we cannot affirm any thing on this point. The answer alleges that the wood was to be cut by the defendant's hands, and that the plaintiff's testatrix was only to furnish the trees standing. It may be that under such circumstances the cost of felling the trees and removing the wood was nearly equal to the value of the wood by the cord as found by the jury, which was fifty cents. Be that as it may, it is not for the court to give another value to the contract than that stipulated by the

parties, nor is it within the legislative competence of a State to authorize any such proceeding..

*The judgment of the Supreme Court of North Carolina must be reversed, and the cause remanded for further proceedings.*

MR. JUSTICE BRADLEY dissenting.

I. dissent from the judgment of the court in this · case. The parties never contracted that the price to be paid for the wood was to be equivalent to any amount of specie. The price contracted for was one dollar per cord. Specie at that time was worth twenty-one dollars to one of Confederate currency.. Can it be supposed that the parties agreed on a value of five cents per cord for the wood ? The suggestion does not appear to me to be reasonable. The truth is, that the relation between Confederate currency and specie in North Carolina at that time is entirely unsuitable to be used as a rule in estimating the value of contracts. Specie could not be had at all, and consequently the relation between currency and specie was no guide as to the value of currency in purchasing commodities. The verdict finds that the wood, at the time of the contract, was worth fifty cents in specie per cord; and yet it sold for a dollar in currency.. This shows that currency was equivalent to fifty cents on the dollar in purchasing capacity. I hold, therefore, that the law of North Carolina, in allowing the jury to estimate the real value of the consideration in cases where it is impossible to get at the true value of the money named in the contract, is a most sensible and just law.

By what authority do we scale down the price named in the contract at all ? Is it not on the ground that the value of the money named by the parties is not a true criterion of the value of the contract ? When once we admit this, we make that money a mere commodity, and endeavor to find its true value. How, then, is its true value to be measured ? Is it to be measured only by the amount of specie it would purchase at the time, when, perhaps, no specie existed in the country ? Why not measure its value by the amount of United States treasury notes which it would buy ? They were money, as well as specie. But suppose they were not to be had in the market

any more than specie. Under such circumstances, is not the only true method of ascertaining its value the purchasing capacity which it had? I hold that this is the true test, when, as stated by the Legislature of North Carolina in its preamble to the act, it is impossible to scale the value of Confederate money accurately for all parts of the State under the varying circumstances that arose. Under such circumstances, the only fair mode of ascertaining the purchasing value of the currency used is to ascertain the true value of the consideration or thing purchased. This is not to set aside the contract of the parties, but to carry out their contract. It is the proper method of ascertaining what their contract really meant, and giving it full force and effect.

Where a regular current ratio exists between a paper currency and specie or other lawful money, of course it ought to be used as the rule to ascertain the true value of contracts. But when no such regular marketable value does exist, then the next best mode of getting at the value of the contract, or of the currency mentioned therein, is to ascertain the true value of the subject-matter about which the contract was made. This is what the Legislature of North Carolina authorized to be done, and what was done in this case.

*I think the judgment should be affirmed.*