H. McD. ROBINSON, Adm'r, v. A. E. McDIARMID, and others.

## Executors— Wills.

1. An executor cannot seek the advice of the court in an application for the construction of a devise of land, unless it involves the administration of the personal estate.

2. A legacy to "each of my sister's children" goes to the children living at the time of the testator's death.

3. And where the "remaining portion" of the estate is given to a legatee, "to be disposed of as I have already directed" without proof of a further declaration of the trust, the interest so undisposed of is held by the trustee as a resulting trust for the heirs at law.

(*Taylor* v. *Bond*, Busb. Eq , 5; *Simpson* v. *Wallace*, 83 N. C., 477; *Robinson* v. *McIver*, 63 N. C., 645; *Petway* v. *Powell*, 2 Dev. & Bat. Eq., 308; *Knight* v. *Knight*, 3 Jones Eq., 167; *Shinn* v. *Motley*, Ib., 490; *Mason* v. *White*, 8 Jones, 421; *Thompson* v. *Newlin*, 6 Ired. Eq., 380; *Cook* v. *Redman*, 2 Ired. Eq., 623; *Green* v. *Collins*, 6 Ired., 139, cited and approved.)

ROBINSON *v.* McDIARMID.

CIVIL ACTION for construction of a will tried at Fall Term, 1882, of CUMBERLAND Superior Court, before *Gilmer, J.*

Mary R. McDiarmid on July 25th, 1876, made her will disposing of her estate and nominating no executor, which after her decease in April, 1882, was admitted to probate, and letters of administration with the will annexed issued to the plaintiff. The will is as follows:

"I, Mary R. McDiarmid, being sound in mind, my last will and testament.

My bank stock, my county bonds I leave to my following heirs: Bank stock $5,000—$3,000 of it I leave to my mother, Ann Eliza McDiarmid; $800 to my nephew, Marshall McDiarmid Williams; $200 to each of my sister, Mrs. Ann V. Huske's children. County bonds $2,500—$500 to each of my brothers, Mr. A. K. McDiarmid and W. J. McDiarmid; $500 to my niece, L. M. Robinson: $500 to my nephew, H. McD. Robinson; $500 to my mother, Mrs. Ann Eliza McDiarmid. My interest in the Moore county land, I leave to my niece L. M. Robinson and the children of my sister Mrs. Ann V. Huske; the remaining portion I leave to my mother to be disposed of as I have already directed."

(Signed,)          MARY R. McDIARMID, July 25th, 1876.

The relations of the several beneficiaries mentioned in the will are these:

Ann E. McDiarmid is the mother; A. K. McDiarmid and W. J. McDiarmid, the brothers of the testatrix. The plaintiff, H. McD. Robinson, and Lucy M., wife of John Williams, and who is mentioned in the will by her maiden name, are the children of a deceased sister, C. C. Robinson, who died before the making of the will.

Marshall McD. Williams is the son of another sister who was also deceased at the date of the will.

Clem, Joseph, D. McD., Herbert, Louise, Cattie and Sadie

Huske are the surviving children of Ann V. Huske, a sister of the testatrix, who died during the interval between the execution of the will and her death, and of the children the two last named were also born after the date of the will, and prior to the death of the testatrix.

Another child, Clay Huske, was living when the will was made, but died before the testatrix.

The devisees and legatees mentioned are the next of kin, and would be entitled to the personal estate of the deceased in case of intestacy, and (except the mother) heirs at law.

The testatrix owned in July, 1876, fifty shares of stock in the Fayetteville National Bank of the par value of $100, each, and $2,500 in Cumberland county bonds.

In September, 1880, the testatrix at the instance of her brothers and for their accommodation, by the agency of W. J. McDiarmid, disposed of all the bank stock for $4,500, its fair market value at the time, and likewise $1,500 of the county bonds for $1,200, which aggregate sum was loaned to them, and their note bearing eight per cent. interest executed to her therefor, the interest on which for one year was paid to her. Since her decease the note has been delivered to the plaintiff, as assets of the estate.

In April, 1882, before the death of the testatrix (as we infer from the case, though the fact is not distinctly stated) the remaining $1,000 in county bonds was also sold for $840; and that sum received credited to her on the books of her said brothers.

The interest in the Moore county lands is devised under the will of D. McDiarmid, the clause relating to which is in these words:

"It is my will and desire that my interest in the lands in Moore county, being one half of 5,000 acres, be sold, when it will be advisable to sell, and the proceeds of such sale be equally divided among my daughters, C. E. Robinson and M. R. McDiarmid, and my sons Archibald and W. J. Mc-

Diarmid, and my grandsons M. McD. Williams and Daniel McD. Huske, and their heirs."

The testatrix also owned a moiety in the remainder of the land, known as the " McDiarmid homestead," consisting of about 1,250 acres—the homestead and about 1,250 acres having been devised in a codicil to the will of said D. McDiarmid to A. E. McDiarmid for life, with remainder to said C. E. Robinson and the testatrix, accompanied with a wish that it should continue " to be a home for such of the testator's family as had none elsewhere."

The testatrix held another note of her brothers, A. K. and W. J. McDiarmid, amounting in principal and interest to $2,371.32, and other personal property worth $150, and the debts and liabilities to be provided for are estimated to be $1,000.

There are not found any directions in writing to the mother of the testatrix in regard to the disposal of the property included in the last clause of her will, and the said Ann E. McDiarmid, now advanced in years, in declining health and feeble memory, does not remember accurately or definitely the instructions given her in reference thereto.

The present action is instituted by the administrator against the beneficiaries under the will, for advice and direction in the execution of its imposed trusts, upon the facts stated, contained in the complaint and assented to by the defendants.

The inquiries with the response of the judge to each in the court below, are as follows:

1. Did the testator addeem the bequests of bank stock and county bonds by the sale in her life-time, or do the legatees share in the money fund as substituted for them and in like proportions?

The court declares in answer to the inquiry that the legacies are not addeemed, and the proceeds of the sale must be similarly distributed among the legatees.

2. Does the testatrix direct her interest in the Moore county land to be divided *per capita* between her niece L.; M. Robinson (now Williams) and the children of her sister Ann V. Huske, or in moieties—one half to her named niece and the other half to the children of Ann V. Huske collectively.

The court rules that the division must be *per capita* between the legatee named and such of the children of Ann V. Huske as were alive at the death of the testatrix, each of said children taking an equal share with her.

3. The third inquiry, whether Clay Huske, who died before the testatrix, takes any interest under the bequest which is transmitted to his personal representative is answered in the preceding response.

4. Is Ann E. McDiarmid entitled to take and hold the property included in the words "the remaining portion" used in the concluding clause, to her own use?

This interrogatory is answered in the affirmative.

5. What property is embraced in the words, "the remaining portion" and what is the legal effect of the superadded words "to be disposed of as I have already directed her."

The court declares that the expression used, "the remaining portion," comprises all the real and personal estate of the testatrix not otherwise disposed of in the will, to-wit, the remainder in the homestead and all lapsed or void legacies, and the legatee holds the same for her own use, subject, nevertheless, to any positive directions which may hereafter be made to appear to have been given to the said Ann E.

From the rulings of the court in response to interrogatories numbered 3, 4 and 5, the defendants John Williams and wife, and Marshall McD. Williams, appeal; and from the ruling in response to the 2d interrogatory, the defendants John Williams and wife alone appeal.

*Messrs. Guthrie, Hinsdale & Devereux, Ray & Huske,* represented the contesting legatees and devisees.

SMITH, C. J., after stating the above. The question in respect to the devise of the lands in Moore county is not within the jurisdiction of the court in the present proceeding, and cannot be considered. The construction of a devise of lands is the subject matter of a suit at law, and as the estate passes directly to the devisee, the representative of the testator has no duty to be performed in respect to it and consequently cannot seek the advice of a court of equity in a matter in which contesting devisees are alone the claimants.

"A court of equity can only take jurisdiction," in the words of PEARSON, C. J., "where trusts are involved, or where devises and legacies are so blended and dependent on each other, as to make it necessary to construe the whole, in order to ascertain the legacies; in which case the court, having a jurisdiction as to the legacies, takes jurisdiction over all other matters necessary for its exercise. *Taylor* v. *Bond,* Busb., Eq., 5.

So, as is said in a more recent case, " the court will entertain an application from a trustee for advice as to the discharge of the trusts with which he is clothed, and as incident thereto, the construction and legal effect of the instrument by which they are created, when a case is presented in which the opinion can be made effective," ( *Simpson* v. *Wallace,* 83 N. C., 477,) and only in such case.

The case cited in the argument to support the claim to jurisdiction (*Robinson* v. *McIver,* 63 N. C., 645,) was of the kind referred to by the Chief Justice, where there was a disposition of both real and personal estate in the same clause, and the construction involved the administration of the latter.

It is true the land is devised to the testatrix and others

by her father, to "be sold when it will be advisable to sell," committing the determination of the proper time for doing so to the discretion of his executor, yet the discretion has not been exercised and the land remains unconverted still, and falls under the principle enunciated. If it had been sold and the proceeds were in the hands of the executor, or other person, for a disposition under the will, then, the presnet plaintiff, not having the fund in possession and with no present duty to perform in reference to it, cannot ask the advice of the court in advance.

"We see no ground," says the Chief Justice in discussing the subject in *Taylor* v. *Bond, supra,* "for the jurisdiction to give advice to an executor in regard to his *future conduct* or his future rights."

We must therefore reverse the ruling of the court in assuming to put an interpretation upon this clause of the will, and determining the rights of parties under it, not because it is an erroneous interpretation, but for the reason that in this proceeding the question cannot be entertained. It is therefore to be left undecided as if not in this record.

2. We concur in the opinion that all the children of Ann V. Huske *living at the time of the death of the testatrix,* as well the two youngest born after the making of the will, as those born before, and none others, take the legacy given "to each of my sister, Mrs. Ann V. Huske's, children," excluding Clay, who died during the lifetime of the testatrix.

But this is not a case of lapse; the deceased child not being *in esse* at the death is not embraced in the words of the bequest to the others as a class. *Petway* v. *Powell,* 2 Dev. & Bat., 308; *Knight* v. *Knight,* 3 Jones Eq., 167; *Shinn* v. *Motley, Ib.,* 490; *Mason* v. *White,* 8 Jones, 421.

3. The remaining inquiry is as to the property comprehended in the expression used in the concluding clause, and whether it is an absolute gift to the mother upon the facts

stated, for her own use and benefit, or with a resulting trust to those who would be entitled in case of an intestacy.

It is manifest from the language of the testatrix, and to be inferred from the testimony of the mother, that parol directions had been previously given by the testatrix, to which she refers in annexing to the gift the words " to be disposed of as I have already directed her." A trust is thus clearly declared to be enforced, though, in parol, if it could be ascertained, as is held in *Thompson* v. *Newlin,* 6 Ired. Eq., 380, and was previously in *Cook* v. *Redman,* 2 Ired. Eq., 623; and even where no indication of the trust is found in the will itself and must be shown by intrinsic proof. But the donee to whom the property is given, and who is the depositary of the intention of the testatrix, is unable to recall the instructions that constitute the trust and declare the terms, and hence the donation is to a trustee upon a trust which fails because its terms cannot be discovered, and which may be for the benefit of others, as it may be for her own.

" There is no equitable principle more firmly established," remarks a writer on the subject, " than that where a voluntary disposition of property by deed or will is made to a person, *or trustee,* and the trust is not declared at all, or is ineffectually declared, or does not extend to the whole interest given to the trustee, or it fails wholly or in part by lapse or otherwise, the interest, so indisposed of, will be held by the trustee, not for his own benefit, but as a resulting trust for the donor himself, or for his heir at law or next of kin, according to the nature of the estate." Hill on Trustees, 114. To same effect 2 Story Eq., § 1196 a.

The cases cited in the argument against the ruling of His Honor fully sustain the doctrine thus announced. When in disposing of the residue the testatrix says: " I direct my said trustee or trustees to pay and apply the same to such person or persons, for such uses and upon and for such trusts, interests and purposes, as I shall by my codicil to this my

will, duly executed, direct and appoint," and the deceased made no such codicil, though the heirs were excluded in other provisions of the will, it was held that the law must dispose of that held upon undeclared 'trusts." *Fitch* v. *Weber*, 31 Eng., Ch. Rep., (6 Hare,) 145.

In passing upon a bequest to the Bishop of Durham, " upon trust to pay her (the testatrix) debts and legacies, &c., and to dispose of the ultimate residue to such objects of benevolence and liberality, as the Bishop of Durham in his own discretion shall most approve of, he being appointed executor also, LORD ELDON thus lays down the rule : " If he (the testator) says he gives in trust and stops there, meaning to make a codicil, or an addition to his will, or when he gives upon trusts which fail or are ineffectually expressed, in all those cases, the court has said, if upon the face of the will there is declaration plain, that the person to whom the property is given, is to take it in trust, and though the trust is not declared, or is ineffectually declared, or becomes incapable of taking effect, the party shall be a trustee, if not for those who were to take by the will, for *those who take under the disposition of the law. Morice* v. *Bishop of Durham*, 10 Vesey, Jr., 522.

But a case in its features closely resembling that before us, is that of the *Mayor, Aldermen and Burgesses of Gloucester* v. *Wood*, 25 Eng. Ch. Rep. (3 Hare) 131, the material facts of which are these :

James Wood in a codicil, dated July, 1835, uses this language : " In a codicile to my will I gave to the corporation of Gloucester 140,000l. In this, I wish that my executors would give 60,000l more to them for the same purpose as I have mentioned," &c. The testator died in April, 1836, and this and two other scripts of a prior date were propounded and proved, and no other testamentary paper· could be found. In neither of these was found any purpose expressed as to the disposal of the fund thus given. Upon a

bill filed for the legacy by the corporation, the Vice-Chancellor refused to decree the payment, declaring that "no rule of law can be better settled than this: that unless the legatee intended to be benefited by a particular bequest can be ascertained, the mere intention that the residuary legatees of a testator should not take, *will be inoperative,*" and he declined in dismissing the bill to dismiss it without prejudice. In this case a previous codicil referred to as declaring the trust or purpose of the testator in making the pecuniary bequest, could not be found—as the verbal directions of the testatrix to her mother, in reference to the disposition of the gift to her, had faded from memory of the latter and were wholly lost.

If the gift was to the devisee or legatee to be disposed of as she deemed proper, or followed by words of equivalent import, the gift would be in terms absolute, as the power of disposition is an element of property and unrestrained, incidental to ownership; but it is otherwise, if the disposal is restricted.

Thus, when the testator gave all the remainder of his estate to his wife, "to be divided among my children as she thinks proper," and not with an unrestrained power of disposition, it was declared that the wife took no beneficial interest, but held in trust for the children between whom she had authority only to divide and distribute. *Green* v. *Collins,* 6 Ired., 139.

These authorities seem decisive against the claim of the mother to the ownership of the estate mentioned in the residuary clause, and we must reverse the ruling of the court in this behalf, and declare that there is a resulting trust for the heirs and next kin.

While we do not agree with His Honor that there is a legacy lapsed by the death of Clay Huske, we concur with him that all the undisposed of estate of the testatrix passes

under the words, "the remaining portion," that is, such estate as is left after the previous disposition.

The inquiry as to the ademption of the bequests of the bank stock and county bonds, by their subsequent conversion into other interest-bearing securities, is not before us, there being no appeal from the ruling of the court in respect to that, and the parties submitting to the disposition directed of the substituted fund. We advert to it merely to avoid any inference of our acquiescence in the ruling in consequence of failing to notice the point.

A judgment may be drawn in accordance with this opinion, and the costs will be paid out of the funds in the hands of the plaintiff, as administrator. Cause remanded.

Error.                              Judgment accordingly.