J. W. JENNINGS and others v. J. W. COPELAND and others.

*Guardian and Ward—Executors and Administrators—Confederate Currency.*

1. A guardian surrendered his office in March, 1863, to one whom he supposed to be his legal successor and made a settlement with him, though he was not regularly appointed guardian until December following, but in the meantime acted as such in good faith; *Held*, that the management of the fund from March to December must be treated as an exercise of an agency of the former guardian, whose bond is responsible for any loss resulting therefrom.

2. A guardian is personally responsible for the amount of trust funds used in the purchase of a note which was assigned to him individually, and without any declaration of the trust, but is not in default for converting depreciating Confederate currency into notes.

3. An administrator of a deceased guardian, under the law in force previous to the adoption of the Code of Civil Procedure, was bound to take reasonable steps, by suit or otherwise, to secure trust funds until they could be legally delivered to a succeeding guardian.

4. And where such administrator collects rent of land, he is accountable for the same as assets.

5. An administrator is not chargeable with negligence in failing to collect a debt solvent in January, 1865, but became insolvent at the close of the war. But where he sells personal property he is chargeable with the price bid, scaled under the act of 1865–'66, ch. 38, and not for the value of the articles sold.

(*Purser* v. *Simpson*, 65 N. C., 497; *Covington* v. *Leak, Ib.*, 594; *Love* v. *Logan*, 69 N. C., 70; *Larkins* v. *Murphy*, 71 N. C., 560; *Alexander* v. *Wriston*, 81 N. C., 191; *Rogers* v. *Gooch*, 87 N. C., 442; *State* v. *Robinson*, 64 N. C., 698; *Washington* v. *Sasser*, 6 Ired. Eq., 336; *Moore* v. *Shields*, 68 N. C., 327; *Hinton* v. *Whitehurst*, 71 N. C., 66; *King* v. *Railroad*, 66 N. C., 277, and 91 U. S. Rep., 3, cited and approved).

CIVIL ACTION heard upon exceptions to a referee's report at January Special Term, 1882, of NORTHAMPTON Superior Court, before *Graves, J.*

The facts are stated in the opinion. The defendants appealed from the ruling and judgment of the court below.

*Mr. R. B. Peebles,* for plaintiffs.
*Mr. Willis Bagley,* for defendants.

SMITH, C. J.   In the year 1859, H. C. Edwards, by order of the county court of Northampton, became guardian to the plaintiffs, Joseph Futrell and Catharine, since intermarried with the plaintiff James W. Jennings, then infants residing in said county, and entered into bond in the penal sum of four thousand dollars, with sureties as prescribed by law for the faithful performance of the trusts imposed.   Subsequently he executed another bond with sureties in the penalty of ten thousand dollars, with like condition, both of which were and are solvent securities for the trust estate which went into the possession of the guardian.   At March term, 1863, of said court, the guardian surrendered his office, and at December term following Harrison Futrell, the intestate of the defendant James W. Copeland, was appointed in his place, and gave bond to discharge the duties assumed in the sum of ten thousand dollars, with one Samuel A. Warren and the defendant John Davis his sureties, which was accepted.

In the year 1861 the infants removed from this state to Indiana, where the said Catharine, a minor, was married to the plaintiff Jennings.   She arrived at full age in May, 1867, and her brother Joseph, in August, two years thereafter.

The amounts in the hands of Edwards due his wards respectively were, according to his returns made in March, 1861, to Catharine, $777.72, and to Joseph, $789.90, which (except the small sum of $33.04) consisted of notes and bonds which were passed over by a preceding guardian and were mostly collected by Edwards in the latter part of 1862 and early in 1863.

In March, 1863, upon his resignation of the trust, Edwards, for some unexplained reason, but probably under the erroneous impression that the intestate, Futrell, had become his legal successor, came to an account and settlement with him as such guardian, paying over in currency the sum of $893.57 and

delivering to him as part of the trust estate two notes payable to Edwards as guardian, one against Goodwin C. Moore and John W. Moore, his surety, the other against James H. Bryan and Matthew Bryan, his surety, both 'of which were then solvent and so remained, the former until after the end of the civil war, the latter until the year 1868.

Three days after the settlement, Futrell acting as guardian and in good faith, with the funds received, purchased a note, executed by S. W. and A. M. Wood to W. W. Edwards and endorsed by Edwards by Aquilla Castellow, from the latter by whom it was assigned to Futrell individually, without any declaration of trust; and on March 31st he loaned $500 of the money to H. E. Hoggard, in good faith, for the benefit of the ward Joseph, taking his note with N. S. Hoggard as surety, drawn payable to said Futrell as guardian. These notes were solvent at the time and remained so, the first until 1866, the other until 1868.

Harrison Futrell continued to hold possession of the notes until his death in January, 1865, as has the defendant Copeland; to whom letters of administration issued since that time, and they, with the notes received from Edwards, were tendered by him to the plaintiff Jennings, as part of the trust estate before the commencement of the present suit on November 3d, 1869.

On March 25th, 1865, after due notice the administrator sold at public auction the personal property of the intestate, in presence of a good attendance of persons, for the aggregate sum of $1,060, and made due return thereof.

He also took possession of the intestate's land and rented it out annually from January 1st, 1866, to January 1st, 1872, collecting the rent money except for one year, with which he is charged, and on May 20th of the last mentioned year sold the land for the sum of $300.

Among the notes mentioned in his inventory is one against one Newlin, which, being afterwards discovered to belong not to the intestate but to his surviving wife, was restored to her.

These are the prominent and material facts found and reported by the referee under an agreed order of reference, entered on the record, upon the accompanying testimony and exhibits, into the sufficiency of which, this being an action on the guardian bond, we are not permitted to enquire, nor is it necessary to recapitulate his deduced conclusions of law.

To the findings, both of fact and law, a series of exceptions were filed, in number 18 by the plaintiffs and 15 by the defendants. Of the plaintiffs exceptions, some were sustained and others overruled, rendering needless a consideration of those of the defendants; and the court ruled in substance that the intestate, after his appointment, should have called the preceding guardian to full account of his administration, and held him responsible for the entire trust estate, in disregard of what had taken place in their settlement of March, and that for his negligence in not doing so, the intestate's estate was chargeable with the full value thereof, and this without credit or abatement for any of the retained and lost securities tendered to the plaintiffs. The account of the referee was thereupon recommitted to the clerk for correction and reformation according to the ruling.

The clerk upon this basis restated and reported the account, charging the intestate's estate with the sums specified in the official returns of Edwards, reduced under the scale of two-thirds of the respective amounts with credits for disbursements and commissions, and interest computed to the 9th day of January, 1882. The clerk also reported an account of the defendant Copeland's administration of the intestate's estate, in which he is personally made liable for the Wood and Bryan notes, as assets lost by negligence, and the amount of assets in his hands, with interest to the same time ascertained and reported to be $1,118.14, which is nearly $500 in excess of the balance first reported.

The exceptions to the clerk's report were overruled and its confirmation followed by a judgment in which the plaintiffs recover of the defendant (Copeland as administrator and Davis)

the sum of ten thousand dollars, the penalty of the bond to be discharged on payment to the plaintiffs, Jennings and wife, of the sum of $1,188.68, with interest on $587 from January 9th, 1882; and to the plaintiff Joseph the sum of $1,122.35, with interest on $554.25 from the same date—the judgment against the administrator for the amount of the assets in his hands and a judgment *quando* against him for the residue, besides costs.

The defendants' exceptions, which alone are brought up on the appeal, are confused and in some respects indefinite, but, as understood, seem to be comprised in the following objections to the action of the court:

1. The entire ignoring the settlement of March 4th, 1863, and the transfer then made of the trust estate, and the ruling that the intestate was responsible for the whole amount which should have been in Edwards' hand in December, and collected by him for the use of the wards.

2. The refusal to allow as credits the amounts due on the four several notes tendered to the plaintiffs and rejected.

3. The charges against the administrator of rents of land.

4. The charge for the personal property sold at its estimated value instead of the price it brought, reduced by the scale.

5. The ruling by which he is held personally responsible for the amount of the notes against Wood and Bryan as assets lost by his negligence.

*First and Second Exc.*—The first and second exceptions, which are interdependent, may be considered together.

The rejection of the four offered notes as credits rests, as we interpret the views of the court, upon the supposed absolute nullity of the premature settlement and unwarranted transfer of the guardian funds from Edwards to his successor, whose authority to take possession was conferred nine months later. This is a narrow and incorrect view of the transaction conducted in entire good faith, as the referee finds, on the part of both, and the legal consequences flowing from it. It cannot be less favorable than it would be if the former guardianship had continued

with all its attaching responsibilities, until it touched the time of appointment and qualification of the succeeding guardian. In this aspect, the management of the estate by Futrell may be treated as the exercise of an agency on behalf of Edwards, and the funds already in the hands of the former, rightfully in his possession as guardian, as soon as the authority to hold it was conferred. The result reached is the same as if the trust and its obligations rested upon Edwards until Futrell became trustee. If there had been misconduct and loss resulting during the assumed agency, the responsibility would rest upon the bond of Edwards and the duty of enforcing it devolve upon his successor. But if none such can be imputed, and the management during the intermediate period has been discreet and favorable to the wards, there is no ground upon which a default on the part of either can be charged. The enquiry, then, must be into the care and prudence with which the trust estate, after passing into the hands of Futrell in March, has been since managed, and the propriety of the investments made. Considered in this light, there seems to be no just cause of complaint for the retention of the transferred notes, nor for the conversion of the depreciating currency into the notes of Wood and Hoggard. The assignment of the Wood note was not to Futrell in his fiduciary but in his individual capacity, thus amounting to a conversion of the money used in procuring it and its appropriation to his own use. While the wards could at their election ratify the act and follow their funds into the invsstment, claiming the note as their own, they do not choose to do so, and the misapplication stands, Futrell thus rendering himself liable for the amount. The other notes were in fact and upon their face part of the infants' estate, and the loss must be theirs unless caused by subsequent negligence. The note of Moore could not be collected after the close of the war, as by its results the debtors were rendered insolvent, and no culpability is incurred by the failure to make efforts to enforce payment. It was not ordinarily the duty of the fiduciary to collect a well secured debt during the war in a depreciated

37

currency. *Purser* v. *Simpson*, 65 N. C., 497; *Covington* v. *Leak*, *Ib.*, 594; *Love* v. *Logan*, 69 N. C., 70; *Larkins* v. *Murphy*, 71 N. C., 560.

It is equally manifest that no blame attaches to Futrell, whose death occurred early in 1865, for retaining the notes of Bryan and Hoggard, and if responsibility for their loss must fall on his estate, it arises from the inaction and subsequent neglect of his administrator, and which the latter ought to make good.

This brings up the question whether the administrator, coming into possession of securities, upon their face shown to belong to others and held by the intestate in trust only, was bound to take steps to save them during the interval between the termination of the war and the year 1868, after which they became worthless.

Under the changes in the law, introduced by the adoption of the Code of Civil Procedure in 1868, the personal representative of a deceased guardian, coming into possession of a note payable to him, as such, and held in trust for the ward, cannot maintain an action in his own representative capacity for the recovery of the money due, unless the indebtedness to the ward has been fully paid and the fiduciary obligation discharged, whereby he would be entitled to it as his own. This is held in *Alexander* v. *Wriston*, 81 N. C., 191; and the principle reaffirmed in *Rogers* v. *Gooch*, 87 N. C., 442.

But the rule was otherwise before; and the action, for whosoever's benefit prosecuted, was required to be brought in the name of the executor or administrator, and this was the law in force during the three years of solvency of the debtors and while the notes were held by the defendant Copeland without putting forth any effort to collect by suit or otherwise. It is true the trust reposed in Futrell was personal and terminated with his life, so that his administrator could not exercise the functions of a guardian thereafter in the management and disposition of the trust estate. But the duty did devolve upon him of protecting and preserving it, until it could be legally delivered to a succeed-

ing guardian or to the infant, if there were none, on his arriving at full age. He held possession with authority to secure and enforce payment, and this is associated with the obligation to exercise the power, when necessary, to secure the fund. The preservation of the security involves the exercise of reasonable care and prudence to avoid loss from insolvency, as from other causes which ought to be guarded against. The obligation of the guardian bond extended so far as to secure the preservation and delivery over of the trust estate after death to the party entitled to receive, and is liable when, from negligence, it or any part is lost and injury comes to the infant. This is the view taken in *State* v. *Robinson*, 64 N. C., 698, and the authorities generally concur in this estimate of fiduciary duty.

" The executor or administrator of the guardian as such has no authority, for guardianship is a personal trust and not transmissible. But he should close the accounts of the deceased guardian in court and pass the balance over to his successor." Schoul. Dom. Rel., §314.

We have had some hesitancy in applying the rule to the share of the estate belonging to the *feme* plaintiff, since her husband had the right at once upon the marriage to reduce it into possession and apply it to his own use, and he has been also neglectful, during a large portion of the time when the notes could have been collected, to take any steps towards a settlement or to get possession of the property. But as the fund was not separable and each had an undivided share in each note, the vigilance required in the protection of the interest of the one would have equally served the other, and the only legal right to sue and collect remained with the possession in the administrator.

*Third Exc.* The rents of the land during the years in which the administrator had taken it in charge were assets for which he is accountable, as well as the proceeds of sale. When rents are collected by the guardian of an infant heir or devisee and spent in his maintenance, they are not recoverable by the representative; but when he possesses himself of them, they consti-

tate a part of the estate and are liable to the claims of creditors of the deceased. *Washington* v. *Sasser*, 6 Ired. Eq., 336; *Moore* v. *Shields*, 68 N. C., 327; *Hinton* v. *Whitehurst*, 71 N. C., 66.

*Fourth Exc.* The exception to the charge against the administrator of the estimated value of the articles of the personal estate, instead of the sum for which they were sold, scaled under the statute, must be sustained. The referee assigns as a reason for this charge, that the administrator could have collected such value from the purchasers, and must be presumed to have done so. In this he mistakes the law. The act of 1865–66, ch. 38, which undertook to allow a recovery, not according to the contract but the value of the contract—in other words, the value and not the price for which the goods sold—though held to be a valid enactment by this court in *King* v. *Railroad*, 66 N. C., 297, was declared by the supreme court of the United States, when the case came before it for review on a writ of error, to be unconstitutional and void. 91 U. S. Rep., 3.

As the administrator could only compel payment of the price bid, and that reduced by conversion into good money under the scale, he cannot be made accountable for more.

*Fifth Exc.* As the intestate's estate has been subjected to the loss of the Bryan debt which was solvent until 1868, and this arises solely from inaction and neglect of his administrator, it should fall upon the latter; and so he is properly charged in his administration account. But he ought not to be charged with the loss of the debt of Moore, for the reason that it became insolvent soon after the war, and the administrator is not in default in failing to secure it. The charge against him for this loss is erroneous, and so far the exception must be sustained. These losses in respect to the notes are alone charged against the defendant Copeland, and our ruling is confined to them in reviewing the matter of this exception.

As the referee ascertains the notes, whereof the trust estate consisted, to have been collected by Edwards late in 1862 and

early in 1863, the scale of January, 1863, should have been applied to the residue of the fund, which ought to have gone into the hands of Futrell, left after deducting the Moore debt, the loss of which the infants must bear.

The points thus reviewed, we believe, embody the substance of the defendant's exceptions, which are numerous, and often but repetitions, without examining those of the plaintiffs. The result reached requires a recommittal of the account for reformation and for a restatement upon the basis of the rulings contained in this opinion.

There is error in the particulars set forth and the judgment below must be and is hereby reversed.

Error.                                        Reversed.