MARY E. BUCHANAN v. ANDREW H. BUCHANAN et al.

*Will—Survivorship—Executory Devise—Contingent Estate—Remainder.*

B devised to his son R all his estate not otherwise disposed of in his will, and provided that "should R die without bodily heir, it is my will and desire that my son A should have it all." R survived the testator and his brother A, and died without issue ; *Held :*

1. That R took an estate in fee terminable at his decease without issue, and in such an event the estate vested in the heirs of A.

2. The "dying without issue," upon which a contingent remainder vests, will be construed as referring to the death of the devisee of the first estate and not to that of the testator, unless the devise be to tenants in common with a clause of survivorship, or it is apparent from the whole will that the testator intended to make the estate dependent on the event of his own death.

*Hilliard* v. *Kearney*, Bus. Eq., 221, commented upon and distinguished.

This is a CIVIL ACTION, which was tried before *Gilmer, J.,* at Fall Term, 1886, of ANSON Superior Court.

The action involves the construction of the seventh clause of the will of Henry Buchanan, under whom both parties to the action claim, and which is as follows:

" I, Henry Buchanan, of the County of Anson and State of North Carolina, being of sound mind and memory, but considering the uncertainty of life, and my earthly existence, do make and declare this my last will and testament, in manner and form following, that is to say:

First. That my executor hereinafter named shall provide for my body a decent burial, suitable to the wishes of my children and friends, and pay the expenses of the same, together with my just debts that may be owing at my death, out of the moneys that may be on hand or that may first come into his hands as a part or parcel of estate. And should no moneys be on hand at my death, it is my will and

desire that my executor sell crops or any part of my perishable property to raise money for the purpose of paying debts according to this clause.

"1st Item.   I give and devise to my son Francis five negroes, viz.: Boston, Rose, Tamer, Lem, Ann.

"2nd Item.   I give and devise to my son Andrew, in cash, fifty dollars.

"3rd Item.   I give and devise to my son Horacio one hundred dollars in cash.

"4th Item.   I give and devise to Jane Riley two negroes, viz.: Jinny and Lucy, one cow and calf, one bed.

"5th Item.   I give and devise to Alexander Riley one tract of land on which I now live, known as the Dickson tract of land, for him and his mother and the rest of the children to live on until the youngest become of age; also a negro boy named Alfred, one named Charles, one named Ned, one named Franky, and a mule named Jersy, one cow and calf, and one bed, and one girl Beck.

"6th Item.   I give and devise to Mary Ellen Riley one negro girl Easter, one negro girl Margaret.

"7th Item.   I give and bequeath to my son Richmond all the remaining part of my property, or all my property not otherwise disposed of, and should Richmond die without a bodily heir, it is my will and desire that my son Andrew should have it all.

"It is my will and desire, that should it become necessary to sell any part of my estate to meet the payment of moneys herein above by me given away, then and in that case my executor shall sell first perishable property and any part of my personal property to raise the same on a credit of twelve months.   And should any residue remain after the payment and delivery of all the general and specific legacies herein set out and named, to be given or returned to my son Richmond.

" It is also my will and desire that my executor be paid for his trouble such compensation or commissions as the County Court of Anson may deem just and right.

" And lastly, I do hereby constitute and appoint my trusty friend," &c.

The will, with attesting witnesses, bears date in August, 1843, and was admitted to probate in the County Court of Anson, at its January session in 1845. The devisee, the testator's son Richmond, made his will in July, 1869, which was proved in the proper Court in June, 1876, and therein he gives to the plaintiff "all his (my) estate, both real and personal," " absolutely and in fee simple."

The defendants are the children and heirs at law of the devisee, Andrew, named in the same clause, who died intestate in 1847, some twenty-two years previous to the death of his brother Richmond, in 1869.

Upon the trial and after hearing the evidence, the presiding Judge being of opinion that the title depended upon the interpretation of the will of said Buchanan, and the effect of the words of limitation, reserved the point and submitted to the jury an inquiry into the amount of damages, and they being found, ruled in favor of the plaintiff as to the title, and gave judgment accordingly, from which the defendants appealed.

*Mr. J. A. Lockhart*, for the plaintiff.
*Mr. E. C. Smith*, for the defendants.

SMITH, C. J., (after stating the case). The ruling brought up for review proceeds upon a construction of the clause of the will in controversy, which requires the death of the devisee Richmond to take place in the life-time of the testator, as the contingency on which the limitation over to Andrew was to take effect, and defeating it if the testator was the survivor.

The devise is of an estate in fee to Richmond, terminable at his decease without issue; and in such event passing over and vesting in Andrew. No time is fixed for the executory devise over to take effect, except that it must be at the death of his brother, whenever this shall occur under the specified condition of his being "without a bodily heir," or childless, and to this the act of 1827 adds, "living at the time of his death." *The Code*, § 1327.

Without the aid of the statute, the concurrent rulings of the Courts are that such a limitation, being upon an indefinite failure of issue, that is, whenever such issue ceases to exist, is void for remoteness, to prevent which the enactment, alike applicable to wills and deeds, was made when no contrary effect is manifest. Thereby the limitation over is made effectual or fails at the death of the first taker, and the result is then determined.

"The series of cases in the English law," in the language of Chancellor KENT, " have been uniform from the time of the Year Books down to the present day in the recognition of the rule of law that a devise in fee with a remainder over if the devisee dies with issue, or heirs of the body, is a fee cut down to an estate tail and the limitation over is void by way of executory devise, as being too remote, and being founded on an indefinite failure of issue." 4 Kent Com., 276, citing numerous cases; see also 3 Greenl. Cruise Real Prop., 461; 2 Wash. Real Prop., 355, to the same effect.

The rulings in this State have been explicit and to the same effect, as will be seen by referring to the following cases: *Sutton* v. *Wood*, Conf. Rep., 202 and 312; *Bryan* v. *DeBerry*, 2 Hay., 356, 546 : *Jones* v. *Speight*, 1 Car. L. Repos., 544, 157; *Sanders* v. *Hyall*, 1 Hawks, 247; *Beasley* v. *Whitehurst*, 2 Hawks, 437; *Ross* v. *Farris*, 4 Dev., 376; *Brown* v. *Brown*, 3 Ired., 134; *Hollowell* v. *Kornegay*, 7 Ired., 261; *Gibson* v. *Gibson*, 4 Jones, 425.

In *Brown* v. *Brown, supra,* it is declared that a devise before the act of 1827, in the words "if my son should die without lawful issue," unexplained, imparted in a legal sense, the failure of issue at any indefinite time, whenever it might happen, and a remainder limited upon such contingency was void."

The remoteness of the limitation, not allowed by the common law, is obviated by the annexing of the statutory words which confine the contingency to the state of things existing at the death of the previous owner.

Now, it is apparent that if the testator intended in the use of such general terms to provide for the happening of the contingency on which the limitation depends during his own life, there would be no antecedent estate to support a remainder, or to admit of a transfer of a preceding estate by way of executory devise, since, in consequence of the lapse, the devise would be of an immediate and present estate; and, as the effect of the superadded legislative words is to fix the vesting at the death of the preceding tenant, so as to obviate the objection of remoteness, so it would seem they must also determine the time when the limitation over, in cases like the present, must take effect.

There are, however, numerous cases in which it has been held that where no specific period is pointed out for the limitation over to vest, other than the death of the first tenant, the testator must be understood to have used the words to prevent a lapse, and to provide against such a result.

The principle is thus enunciated in Theobald's Law of Wills, 483: "If there is an immediate gift to A, and a gift over in case of his death, or any similar expression, implying *death to be a contingent event,* the gift over will take effect only in the event of A's death before that of the testator," and numerous cases are cited in support of the proposition. Here the death, an event certain in itself, is deemed to be contingent in respect to its occurring before or after the tes-

tator's own death, and the event resolves the contingency and determines the ulterior devise. *Rogers* v. *Rogers*, 7 W. R., 541, cited at page 541.

The same author proceeds to say, page 486, " If there is an immediate gift to A, and *if he dies without issue over*, the gift over takes effect upon the death of A, without issue, at any time, whether before or after the testator," referring to many cases in support of the proposition. The contingency contemplated by the testator, in thus expressing himself, is not connected with or involved in the death, but is referable to the devisee's having or not having issue then living, and the death, when it occurs, alone ascertains the efficacy of the ulterior devise.

The distinction in the mind of the author seems to be that when the testator speaks of the death as an uncertain event, he is understood as referring to an uncertainty in the time of its occurrence, whether before or after his own decease, but when the uncertainty is apparent in the form of the expression used, and is referable to the presence or absence of issue at the time of the death, the contingency is determined solely by the event of the death, whenever it may happen.

" Possibly," he continues, in further elucidation of the rule, " when there is a gift over, if any members of a class die without issue to the survivors, the gift over must take effect, if at all, before the time when the survivors are to be ascertained."

To this class belong the cases in our own reports. *Biddle* v. *Hoyt*, 1 Ired. Eq., 159 ; *Webb* v. *Weeks*, 3 Jo., 279 ; *Vass* v. *Freeman*, 3 Jo. Eq., 321 ; *Hilliard* v. *Kearney*, Bus. Eq., 221 ; *Murchison* v. *Whitted*, 87 N. C., 455, while to the former class belong *Davis* v. *Parker*, 69 N. C., 271 ; *Burton* v. *Conigland*, 82 N. C., 99 ; *Price* v. *Johnson*, 90 N. C., 572.

The first of the three last mentioned is summarily disposed of as coming within the principle decided in *Hilliard* v. *Kearney*, without adverting to the differences between them.

It is, moreover, opposed to the ruling in *Jones* v. *Spaight*, 1
Car. Law Rep., *supra*, where the words following a devise of
land to the testator's nephew, George M. Leach, and the male
heirs of his body, were: "If the said George M. Leach dies
without leaving lawful issue, as aforesaid, in such case I give
the said lands to the eldest son of my niece, Mary Spaight
and Col. Spaight, deceased."

It was decided that " the devisor intended on the death of
G. M. Leach without leaving issue, then living, that William
Spaight should have the land." HENDERSON, J., who deliv-
ers the opinion, adding: " In other words, to give this clause
the same construction as if applied to personal estate, for cer-
tainly the reason for giving it a different construction when
applied to real, from that which it receives when applied to
personal estate, fails in this country." This will was made,
as well as the decision upon it, before the Act of 1827.

The other two cases, while recognizing the principle of in-
terpretation developed in *Hilliard* v. *Kearney*, do not fix upon
the death of the person who takes the prior estate as the
time when, if ever, the ulterior estate is to vest, but the one
leaving the point undetermined, and not necessary in deter-
mining the appeal; and the other ascertaining the time of
vesting to be at an intermediate period.

It is difficult to reconcile the various adjudications upon
the subject, and to lay down, in definite terms, a rule of con-
struction which will have the effect of rendering them con-
sistent with each other. But in an able and exhaustive dis-
cussion in *Cox* v. *Hogg*, 2. Dev. Eq., 121, HALL, J., in a sepa-
rate opinion, from which the same extract is taken in the
dissenting opinion in the case of *Galloway* v. *Carter*, at this
term, thus announces the conclusion reached: " However,
the doctrine seems so well established that words of survi-
vorship added to a tenancy in common are so construed as
to prevent a lapse and become inoperative at the death of

the testator, that questions of that description may be considered as put to rest."

So remarks BATTLE, J., delivering the opinion of the Court in *Vass* v. *Freeman*, 3 Jones Eq., 221 : " When slaves or other personal chattels are bequeathed to two or more persons immediately as tenants in common, with a limitation over to the survivors or survivor if, or in case that one or more of them die, it is settled that unless a contrary intent appears from other parts of the will, those who survive the testator will take absolutely," and in support he quotes from *Jarman* v. *Wills*, as follows : " If there be any time subsequent to the death of the testator to which the period of survivorship can be referred, as for instance, the death of a tenant for life, or the time when the property is to be divided, that will be adopted instead of the death of the testator, unless a special intent to the contrary can be found in the will."

. And again, " Yet when there is another point of time to which such dying may be referred, as is *obviously* the case when the bequest is to take effect in possession at a period subsequent to the testator's decease, the words in question are considered as extending to the event of the legatee dying in the interval between the testator's death and the period of vesting in possession."

In *Cambridge* v. *Rent*, 8 Ves., 12, cited in the opinion in *Hilliard* v. *Kearney*, the testator bequeathed a sum of money to his sister Martha, which was, " in case of her death, to devolve upon her sister Cornelia, and in the same clause a like sum to Cornelia, which was limited over in the same words to the first named legatee. Sir WILLIAM GRANT, Master of the Rolls, thus expresses himself in reference to the construction of the will : " The words in which the bequest over is expressed have not in themselves, nor have they by construction received a precise and definite meaning in which they must be uniformly understood.

"The expression itself is incorrect, as it applies words of contingency to an event which is certain. * * * The testator may have had some contingency in his mind; as that the legatee was dead at the time he was making the will, or might be dead before his own death, or before the legacy should be payable, and then the inaccuracy consists in not specifying the period to which the death was to be referred. He might have meant to speak generally of the death, whenever it might happen, and then the contingent or conditional words must be rejected. * * * And accordingly in every instance in which these words have been used, the Courts have endeavored to collect from the nature and circumstances of the bequest, or the context of the will, in which of these two senses it is most likely this doubtful and ambiguous expression was employed."

In *Ommaney* v. *Beran*, 18 Ves., 291, a gift of the residue of both real and personal estate to trustees for the use and benefit of Mrs. Ann Popplewell, and *in case of her death* to be equally divided between the children of William Whitehall, was held to have become absolute in her, she having survived the testator. There is here, as in the preceding case, a contingency annexed to an event certain to take place, but uncertain as to the time when it shall occur.

In *Clark* v. *Gould*, 7 Simons, 197, a bequest of personal estate to the wife for life, and after her death to a trustee, in trust to apply the profits for the support of six nephews and nieces, superadding that "*in case of the death of any of them, for the support of the survivors,*" was declared to have reference to a death occurring during the life of the wife, and at her death to become absolute.

There is reason for referring to the testator's death as the period at or before which a gift over to the survivors of a class, who take after a preceding estate, shall take effect since such as then come within the descriptive words, only become entitled, and the share of any dying within the interval, even if

leaving issue would, but for our statute which prevents a lapse, be cut off. *The Code,* § 2144. Hence, if there were such issue, survivorship would not obtain in their behalf, for the contingency of a *dying without issue* does not occur on which the limitation over is dependent.

· Under the Act a lapse in case of the death of the issue of a child who dies before the testator, leaving issue who survives the testator, cannot take place, for the latter is put in place of the devisee or legatee, and succeeds to the devise or bequest, so that it becomes unnecessary to insert in such a clause the usual provision found in it, that if the party dying leaves issue, such issue shall take the estate and share of the deceased.

Unless, then, the gift be to two tenants in common, with a clause of survivorship, which, for the forcible reasons given in *Hilliard* v. *Kearney,* confines the limitation over to a death occurring in the testator's lifetime; or there is an intent apparent in the will or inferrible from its other provisions, to restrict the contingent event to the testator's life, we see no sufficient reasons for qualifying the words " dying without issue," by adding what he does not say, that the " *dying*" must be before he dies himself. As suggested by the late Chief Justice, in *Hilliard* v. *Kearney,* he may provide for the event of the death of a devisee or legatee in his lifetime, by making a new will or a codicil to the other, and if he fails to do so, the statute comes in and makes such provision, when the devisee is his child and leaves issue living at the testator's death who succeeds to the parent's place in the will. In such case, no lapse is possible, and the reason for a construction adopted to prevent its consequences fails.

The true principle which runs through all the cases, is to ascertain the intent of the testator, gathered from the will itself and all its provisions, and to give the instrument an interpretation which will effectuate that intent.

The testator, in the will before us, limits the property to one son upon the death of the other without issue, and with no other qualifying restrictions. How then, by construction, can such a restriction as requires the death to occur before the death of the testator be introduced into the clause and it be made to speak what the testator has not said? Does not the testator intend that Andrew shall have all if Richmond dies, and whenever he dies with no child to succeed him? Why should his estate become absolute if he dies just before, and be defeasible if he dies just after the testator's death, and in each case childless?

Annex the explanatory words of the statute, (and the will construed in *Hilliard* v *Kearney* was made in 1775, long before the enactment,) so that it will read: Should Richmond die without a bodily heir, "not having such heir living at the time of his death;" can there be any serious doubt as to the meaning of the clause, and especially when the act declares that the ulterior limitation shall then take effect? If it ties up the contingency to the death, as an independent fact, so as to avoid too remote a limitation under former rulings, why should it not equally exclude an interpretation which refers to an earlier period for the vesting?

Without disturbing the ruling in *Hilliard* v. *Kearney*, the cogent reasons for which are presented in the able opinion as applicable to a tenancy in common, we are of opinion that the limitation over is valid, and the judgment below must be reversed for error, and a new trial be granted.