SULLIVAN v. JONES.

(Filed December 20, 1901.)

1. WILLS—*Construction.*

Where a testator in one clause of his will "leaves" land to his widow, in another "loans" personal property to her, and in a later clause gives all the property "loaned" to the widow to his daughters, this latter clause will be construed to cover the land and the personal property.

2. WILLS—*Construction.*

Where property is left to daughters after death of widow of intestate and the widow dies before the daughters, the children and grandchildren of the only daughter leaving heirs are entitled to the whole property, under the following clause of the will: "Should either of my daughters die intestate, leaving no issue, my will is that the others inherit to the exclusion of my sons."

ACTION by Henry Sullivan and others against James Jones and others, heard by Judge *Frederick Moore,* at December Term, 1900, of the Superior Court of DUPLIN County. From a judgment for the plaintiffs, the defendants appealed

*A. D. Ward,* and *J. A. Gavin,* for the plaintiffs.
*W. R. Allen,* and *Stevens, Beasley & Weeks,* for the defendants.

MONTGOMERY, J. The testator, in the second clause of his will, devised to his widow, during her widowhood, a tract of land, and in the fourth clause bequeathed to her a like interest in his personal property. As words of conveyancing he used that of "leave" in reference to the land, and "loan" in reference to the personal property, as follows: "Second, I leave to my beloved wife, Sallie, during widowhood, the following property, to-wit, all the lands I now possess (not otherwise disposed of). Fourth, I loan to my beloved wife, Sallie, during her widowhood, all the other property I may die seized or possessed of, consisting of horses and cattle and stock and furniture and farming tools of all kinds."

The fifth clause of the will is in these words: "In the event of my widow's marriage, my will and desire then is, that all of the above-mentioned property loaned to her during her widowhood be sold on a credit of six months, and the proceeds be equally divided between my five daughters, to-wit, Susan, Fanny, Sally, Kitty and Zilpha. Should either of my daughters die intestate leaving no issue, my will and desire is that the others inherit to the exclusion of my sons."

The widow died in 1870, not having married, and afterwards the daughters died intestate and without issue, except Fanny, who married, and whose children and grandchildren are the defendants in this proceeding, and claim the land as her heirs-at-law. The plaintiffs are one of the sons of the

testator and the children of the other sons who are dead, and this proceeding was originally one for the partition of the devised tract of land, the plaintiffs alleging that they were tenants in common with the defendants.

The plaintiffs contend that under the will the five daughters took no interest in the real estate whatever. If we should give the very strictest and most literal meaning of the words "all of the above-mentioned property *loaned* to her during her widowhood," and which is the estate given to the daughters in the fifth clause of the will, it might be plausibly held that reference was made by the testator to the personal property only, as to the rights of the daughters. But we are disposed to give those words, as did his Honor below, a broader significance, and to hold that they are full enough to embrace the real estate also, mentioned in the second clause of the will.

That being settled, what was the nature of the estate of the daughters in the tract of land? One in remainder after the life estate of the widow. The interest of each daughter, however, was defeasible upon the death of either intestate or without issue.

The real question in the case for decision, then, is, when did the limitation end—the interest of each become absolute?

His Honor, upon the finding of the facts, a jury trial having been waived, was of the opinion that the five daughters took each a one-fifth undivided interest in the land under the will of James Sullivan, and that upon the death of the daughters without issue, the share of each descended to the surviving brothers and sisters, or to the representatives of them, by operation of the statute of descents, and not to the surviving daughters under the will, and he rendered judgment that the plaintiffs were tenants in common with the defendants, and that the interest of the plaintiffs in the land was 12-20 undivided interest, and the defendants were enti-

tled to 8-20 undivided interest.    We are of opinion that there
was error in the ruling of his Honor.

There are three words used by the testator in the last sen-
tence of the fifth clause of the will, which forbid the con-
struction his Honor put upon the will in respect to the in-
tention of the testator as to the interest of the daughters in
the real estate.    These words are, *"intestate," "inherit," "ex-
clusive."*    The word "intestate" of course refers to either of
his daughters dying without a will affecting the property
devised to her in the testator's will; and there could be no
disposition by either daughter, by way of will, of property
which she was to receive by the testator's will, before his
death.    So, it must have been the testator's intention to im-
pose the limitation beyond his death.    The death of the
widow, however, would have put an end to the contingency,
and have vested the estate of either of the daughters abso-
lutely, but for the words in the fifth clause of the will, "that
the others inherit to the exclusion of my sons."    *Buchanan
v. Buchanan,* 99 N. C., 308.    In the last case, Jarman on
Wills is quoted from as follows: "Yet, when there is another
point of time to which such dying may be referred, as is ob-
viously the case when the bequest is to take effect in possession
at a period subsequent to the testator's decease, the words in
question are considered as extending to the event of the lega-
tee dying in the interval between the testator's death and the
period of vesting in possession."    But we think the inten-
tion of the testator, fairly inferable from his language, was,
that his sons should have no portion of the lands devised as
long as there was a surviving sister or the representative of
such.

Probably one view of this point is strengthened by a finding
of fact by his Honor that each of the four sons had been
advanced, a short while before the testator's death, an amount
in real estate equal in point of value to the whole of the land

devised in the will. The law does not favor such disposition of property, but it does not prohibit it; and when the purpose of the testator to make such a disposition appears with reasonable certainty, the law will enforce it. The will was inartificially drawn, and we are not sure that we have apprehended, to a certainty, the testator's purpose. But we think the legal significance of the words "inherit," "intestate," "exclusive," in the connection in which they appear in the fifth clause of the will, justifies us in the conclusion we have reached.

We think the legal effect of that part of the will last considered is the same as if the testator had said, "My will further is that if any, or either, of my daughters should die without leaving a will, or issue living at her death or their deaths, the share or shares of her or them so dying (as well the accruing as the original share) shall be, go over, and remain to the surviving sisters and the child or children of such of them as may be then dead, equally to be divided between them, share and share alike; but the children of any deceased child shall in such case represent their parents respectively, and take in families."

We think, from the facts found, judgment should have been given below for the defendants.

Reversed.