B. F. MOORE, Comm'r, *v.* WILLIAM H. SHIELDS, Adm'r *de bonis non*, &c., MEDORA B .HARRISON, and others.

As a general rule, the creditors of an ancestor are entitled to all the rents and profits received by the heirs, since the descent cast. If, however, the heirs are infants, and the guardian has expended the rents and profits, or any portion thereof, in the necessary maintenance and support of the heirs, only that portion unexpended belongs to the creditors.

A fund, in the hands of a Commissioner of the Court, in the nature of rents and profits, which fund originated in a compromise of a certain suit in equity, against the purchaser of land sold by order of the Court, and which sale, by the terms of the compromise, was rescinded, belongs to the administrator and is assets for the payment of debts, subject to the exception in favor of the heirs being allowed necessary maintenance therefrom.

(*Washington* v. *Sasser*, 6 Ired. Eq. 336, cited and approved.)

CIVIL ACTION, heard and decided by *Watts, J.*, at the Fall Term, 1872, of the Superior Court of HALIFAX county.

This proceeding was instituted by the plaintiff, for the purpose of obtaining a decree, declaring the proper application of a certain fund, received by him as Commissioner of the Court, for the benefit of certain infant heirs, under an order of the Court in a former suit, in the decision of which the fund originated.

In the complaint, it is alleged by the plaintiff, and all the

allegations are admitted to be true, that in 1861, one J. H. Harrison, of Halifax county, died intestate, and that letters of administration on his estate were, during that year, granted to B. D. Mann. That the intestate was indebted to the full amount of his personal estate; and being seized and possessed of a large real estate, it was deemed advisable by the guardian and friends of his heirs that it would best promote their interests to sell the same and convert it into money for investment. For this purpose, a petition was filed in the Court of Equity for Halifax county, in their names and that of their mother, who was entitled to dower in the lands sought to be sold, and a decree of sale obtained. That among the tracts sold in pursuance of the decree, was one of 1,400 acres, which with the dower theretofore allotted to the widow of the intestate, and the mother of the said heirs, was bid off by one J. J. Sherrod, in December, 1863, at the price of $30,000, several thousand dollars of which was paid in Confederate money, which was received by the guardian of the said heirs, one W. H. Jones, a defendant herein, for the purpose of paying the large amount of taxes then due from the estate, and of supporting his wards, the orphans of the intestate.

At the close of the war, the heirs, by their guardian, the said W. H. Jones, sought, by a suit in equity, to collect from the estate of the purchaser, Sherrod, who was then dead, and one Asa Biggs was his administrator, the balance due for said land. Sherrod's administrator filed a petition in the cause, alleging that the price bid for the land was payable, according to contract, in Confederate money. This allegation was denied, and after no little delay, the matters in dispute were compromised upon the terms following, that is to say: That the sale to Sherrod should be rescinded, and the land become the estate of the parties entitled to it at the time of the sale, and that beside the sums previously paid by Sherrod, his administrator should deliver the note due

for the rent of 1870, to-wit : for $160, and pay the further sum of $6,110, with interest from 1st January, 1870, making in the aggregate $6,247.42, on the 16th day of May, 1860, of which one-third was decreed to the widow of the intestate, for the damage sustained by her in respect of her right of dower in the premises.. The balance, after deducting costs, attorney's fees, &c., due the wards, was $3,727.98, and two-thirds of the note of $160, due 1st, Jan. 1871.

On account of the insufficiency of the bond of the guardian, and the guardian's failure to renew it, it was decreed by the Court that the fund should be delivered to the plaintiff, as commissioner for investment.

At the death of the administrator, Mann, in 1863, the estate of Harrison, his intestate, had not been settled up, and there were still outstanding, debts to a large amount ; nor had there been an administrator *de bonis non* appointed, at the time of the compromise before alluded to.

One of the heirs, Medora B. Harrison, is of age, and with the guardian of the others, claims that the fund in the hands of the plaintiff, should be delivered to them. The fund is also claimed by the administrator. The plaintiff asks the advice of the Court as to whom it belongs and how he shall dispose of it.

Shields, one of the defendants, and administrator *de bonis non*, of the said J. H. Harrison, in his answer, alleges that he has received nothing from the personal estate of the intestate, and that nothing can be now realized therefrom, and the estate is largely in debt, enough in fact to absorb the $6,727.98, the amount received upon the compromise alluded to before. That if this fund is not available, the real estate will have to be sold. He insists that the fund should be applied to the payment of debts.

In the interest of the heirs, it is alleged that the fund received from Sherrod's estate, was for the use and occupation, rents and profits of the tract of land purchased by

Sherard, and as such the heirs are entitled to it.  The guardian, Jones, further alleges, that owing to his inability to realize anything in the way of income from the land during the war, and since, on account of the litigation in regard to it, his expenditures for the wards, entirely for necessary purposes, have largely exceeded the income, which necessary expenses he has from time to time advanced, being under the impression that the estate was entirely solvent, and that the fund in question belonged to the heirs.  He asks for an account of his guardianship, and that he be reimbursed those sums necessarily expended for his wards, and that the fund be paid to them.

His Honor being of opinion that the fund in the hands of the plaintiff as commissioner, was in lieu of rents and profits arising from the land sold during the possession of the purchaser, and is the property of the heirs at law, adjudged and decreed: 1st. That the defendant, Jones, the guardian, is entitled to so much of the fund as will reimburse him for all necessary advancements made to his wards, over and above the income received by him; and that an account be taken, and the plaintiff pay over to the guardian such sums as are thus ascertained to be due.  2d. That in the meantime thé fund to remain in the hands of the commissioner.  From which judgment, the defendants, Shields and Medora B. Harrison appealed.

*Gatling, Batchelor, Edwards & Batchelor* for appellants.
*Moore* and *Clark & Mullen*, contra.

RODMAN, J.  1. We have no difficulty in saying that the fund in the hands of Mr. Moore must be considered as the rents and profits of the lands.  It is not a part of the land, because that remains in specie, in the possession of the heirs and it does not appear that it has been wasted or dilapidated.

2. As to the application of the fund, we think we are bound by the decision in *Washington* v. *Sasser*, 6 Ired. Eq. 336. Previous to that decision it was the general opinion of the profession, founded on what was said in *Harrison* v. *Wood*, 1 D. & B. Eq. 437, that the heir might hold against the creditors of his ancestor, all the profits of the land which accrued from the time of the descent cast up to a sale under process at law, or to a decree in equity, and that his right in this respect, was the same in a Court of equity as at law. The general rule that the creditors of the ancestor are entitled to all the rents and profits received by the heir, since the descent cast must now be considered established by *Washington* v. *Sasser*. It is supported by other authority. 2 Story Eq. Jur. 1216, and *Curtis* v. *Curtis*, 2 Bro. ch. Cas. 628–633.

It is said, however, that the creditors are the only persons who can demand the application of this fund to the debts, and they ought to be parties, or some of them in behalf of all. They are substantially parties, for the administrator represents them, and there is no more reason for their being personally parties to a proceeding to subject the rents and profits than for their being such in a proceeding to sell the lands. In either case they may come in if they have any reason to do so; if, for example, by reason of any adverse interest in the administrator, or from his misconduct he is not properly representing them. But until they do come in personally, the administrator is their trustee and and representative. It is true, that an administrator is not accountable to the creditors for the rents and profits of the lands, unless he actually receives them, nor is he entitled to receive them any more than he is to sell the land, except upon the insolvency of the personal estate, and upon a proper action in Court for that purpose. It is his duty, by statute, to obtain an order to sell the land; it is not expressly made his duty to proceed to obtain the rents and profits,

but it is his duty in a proper case to do so, as a part of his general duty to collect the assets. If he fails to do either, he cannot be charged with the value of the land in one case, or with the rents and profits in the other as assets. The creditors may, as to the lands, obtain a judgment compelling him to sell them, and they may in like manner obtain a judgment that the rents and profits be paid to him, to be administered, if they be content that he shall administer them ; or by a creditor's bill they may have lands and profits administered by an officer of the Court, as personal assets; upon such a bill would be, thus procuring an equality of distribution and excluding the administrator from his right to prefer. In the present case the creditors have not thought proper to come in, and the Court without some reason for it, will not take from the administrator the administration of the assets whether real or personal, which is his of right.

Again, it is said for the heirs, that the land should be sold and the proceeds exhausted in preference to the rents and profits. There is no such rule of law, and we do not know of any reason why this should be so as a general rule. The creditors are entitled to have their claims paid ; but if there be more property than enough for this, it is no concern of theirs what particular property is applied for that purpose. That must be a matter of discretion in each case depending on the circumstances, and a Court will always make its judgments as to the selection of the property to be applied, such as to promote the interests of the heirs. But there is no case for selection made here. There is but one fund in Court. And if we could, in this case, order a sale of the land without its being applied for, we should think that in most instances it would be for the interest of the heir to extinguish the debts by the rents and profits not needed for his maintenance, and save the land. No reason is presented to make this an exception.

3. *Washington* v. *Sasser* also decides upon the authority of *Thompson* v. *Brown* 4 John, C. C. 619, that if the heir be an infant and the guardian has expended the rents and profits, or any part of them in his maintenance, only the part remaining unexpended is liable to the creditors. We think that when a guardian has disbursed the income for the maintenance of his wards *bona fide,* and in ignorance of the insolvency of the estate, his equnity not to be compelled to pay those sums over again to the creditors is a plain one. In this case the guardian has not actually disbursed any part of the fund, it not being in his possession ; but he says that he has made advances or incurred liabilities for the wards, depending on the fund in question for reimbursement, and that would be the same thing as disbursing. We agree with his Honor, the district judge, upon this point. So much of the fund as will be equal to the advancements of the guardian, made as aforesaid, will be adjudged to be paid to him ; the residue of the fund will be paid to the administrator, to be applied by him in due course of administration. If the parties do not agree upon the amounts, a reference must be had to take the necessary accounts. The costs will be paid out of the fund.

If the parties desire it, the case may be remanded for further proceedings in the Superior Court, in conformity to this opinion.

PER CURIAM.                    Judgment accordingly.