The first and fourth exceptions of defendants involve a construction of the will of Drewry Harris. The clauses of the will bearing upon the point are as follows:
"Item 2. I give and bequeath unto Thomas C., Mary and Martha, children of my brother Newitt Harris, sixteen negroes (naming them) to be equally divided between the said children of my brother, to them and their heirs forever."
"Item 6. I lend unto my brother Newitt Harris during his natural life my negro man `Big John,' also all my land and improvements thereon, on the south or west side of Potecasi creek, and at the death of my said brother I give the said land and the negro to his children, to them and their heirs forever."
The children of Newitt Harris were the present relators, Thomas, Mary, Martha and Addie. It is contended by the defendants that the said Addie Harris is not entitled to a share with the other children of Newitt Harris in the land devised in the above-recited Item 6 (117) of Drewry Harris's will, because, although said Addie was living at the death of the testator, she was not in being at the time of the making of his will, having been born afterwards, and that the true construction of said will would include only those children who were living at the time of the execution of the will, and because the intention of the testator can be collected from Item 2, taken in connection with Item 6, to have been in favor only of the children who were then living.
The principle, as stated in Williams Executors, sec. 981, is: "Generally speaking, every one who at the time of the testator's death falls *Page 87 
within the described class of children will be entitled. But where it appears from express declaration or clear inference upon the will that the testator intended to confine his bequests to those only who answered the description at the date of the instrument, such intention must be carried into effect. A court of Equity, however, is always anxious to include all the children in existence at the time of the death of the testator." Defendants rely upon Lockhart v. Lockhart, 56 N.C. 305, where it is said that, "where a testator in one part of a will uses words descriptive of a class, and in another part uses the same words of the same persons, the presumption is that in both cases the words are used in the same sense."
The application of the above-stated principle was to a very different state of facts than is presented to us. The question was whether certain children took under the will of Sarah Lockhart per stirpes or per capita. By Item 2 there was a specific bequest "unto the children of my son John." Item 5, being the residuary clause, gives all other property undisposed of in former items of the will "to the children of my deceased son John, and my sons Benjamin and Joseph." The Court found no difficulty in arriving at the conclusion that the children of John, being named as a class in the second item, and the same words of description being used in the fifth item, took there also as a class. In the present case there can be no room for construction.
Item 2 gives sixteen slaves to certain persons, naming them and describing them as "children of my brother Newitt," the (118) enjoyment to be immediate upon the death of the testator. By the subsequent item he gives the land to his brother for life, "and at the death of my said brother, I give the said land . . . to his children." It would be a very strained construction which would limit this devise to the children living at the execution of the will. By all rules it would take in children born after the death of the testator, and living at the death of their father, Newitt. In this case, however, Addie was living at the death of the testator, and was entitled to share in the devise.
"In a bequest to a class of persons, as to children, courts will effectuate the intention of the testator by including as many persons answering the description as possible." Meares v. Meares, 26 N.C. 192.
Second Exception. — It appears from the referee's report that on 25 November, 1861, Newitt Harris died intestate, leaving a considerable personal property and two tracts of land known as the Tisdale and Powell places; that S. J. Calvert qualified as administrator on his estate in 1861, and gave bond, which bond remained solvent up to January, 1874. Until the emancipation of the slaves the estate of Newitt Harris remained solvent, but the said administrator took charge of the real estate of his intestate, and declined to surrender it to the guardian on *Page 88 
the ground that Confederate money was depreciating so rapidly he could not tell what would be the condition of the estate. The guardian made no demand for possession until two years after the qualification of the administrator, under an apprehension that the administrator was entitled to hold the land for two years. The guardian was requested by the administrator, however, to rent out the land for 1865, and he rented the Tisdale tract for that year, and the rent appears in his account. He could not rent the Powell tract. After the emancipation said (119) estate became insolvent, and on the ___ day of ___, 18 ___, said administrator began proceedings to sell said lands for assets for the payment of debts, and said Flythe and Mary, Martha and Thomas were duly made parties defendant. Said lands were sold on the ___ day of ___, 18 ___, and the prices obtained for them appear in the account.
Upon the foregoing facts the referee declined to charge the guardian with the reasonable rents of said lands, but stated an account of what said reasonable rents would be. The plaintiff excepted to the refusal of the referee to charge the guardian with said rents. This exception was sustained by the judge, and defendants excepted, and this constitutes the matter now involved in Exception 2. The defendant does not except to the finding of the referee as to the value of the rents, if the guardian is chargeable with them at all.
The administrator has no concern with the real estate of his intestate until it becomes necessary to sell the same for assets, when the statute provides the proceeding by which he may subject the same to sale for the purposes indicated. The Code, sec. 1436, et seq.; Schouler Executors, secs. 212, 213, 509.
The guardian was invested with full power and authority over the estate of his wards. They were the heirs and the owners of the land of their ancestor, subject to the payment of his debts. Before the Act of 1846-47 the procedure to subject the lands to the payment of debts was at the instance of the creditor and against the heirs. After this act the personal representative was required to take proper proceeding for that purpose, but until this proceeding was had it was the duty of the guardian to take charge of the land and rent it out or use it for the benefit of the heirs. If the administrator had collected the rents and paid debts with it, there being a deficiency of personal assets, a court of Equity would not hold the guardian accountable. Hinton v. Whitehurst, 71 N.C. 66; Moore v. Shields, 68 N.C. 327. The order of sale (120) for assets ascertains that it was necessary to sell the land, but not that the rents which ought to have been collected by the guardian had been appropriated to the payment of debts. There is no evidence that the administrator collected any rents. The guardian is *Page 89 
already charged with the rent for 1865 of one tract, and if he has shown that the other tract could not be rented for that year he is not chargeable therefor. He should be held liable for the rents which he ought to have collected for the heirs.
Third Exception. — Newitt Harris, the father of the relators of plaintiff, died intestate in November, 1861, leaving considerable personal property and two tracts of land. His estate was solvent up to the emancipation of the slaves. Drewry Harris died in 1860, leaving a will by which he devised a tract of land to Newitt for life, and after his death to his children, the relators.
Newitt Harris as principal, and Drewry Harris as surety, owed two bonds — one to Summerill and the other to Phillips. S. J. Calvert was administrator on the estate of Newitt Harris, and retained $1,200 on a simple contract debt to himself, and paid Samuel Calvert $556.13 on a simple contract debt, leaving unpaid the two bonds above described.
The estate of Newitt Harris was amply able to have paid these specialty debts. The executor of Drewry Harris filed a petition to sell the lands of his testator, and sold the land to pay the two bonds aforesaid, on which Newitt Harris was principal and Drewry was surety.
Plaintiff charges that the administrator of Newitt Harris was guilty of a devastavit in paying the simple contract debts of his intestate before the specialty debts, thus exhausting the personalty, as it turned out, by reason of the subsequent emancipation of the slaves, and making it necessary for the executor of Drewry to sell the land which had been devised to the relators, the wards of defendant Flythe; and that said defendant should have sued the bond of the administrator of Newitt. The referee found that an action by the guardian against the administrator would have availed the wards nothing, except that (121) it would have revealed the devastavit in paying simple contract debts in preference to specialties, by reason whereof he failed to pay the bonds upon which Newitt was principal, and made it necessary to subject to the payment of the same the lands of Drewry, which had been devised to the wards.
Plaintiff excepted to this finding by referee, and insisted that an account of the estate of Newitt would show that plaintiff's relators were greatly damaged by a failure on the part of their guardian to bring this action. Defendants excepted to all of this finding, except that such suit would have availed nothing. MacRae, J., sustained defendants' exceptions on the ground that the estate of Newitt was solvent at the time of the payment of the simple contract debts, and was rendered insolvent afterwards without fault of the administrator. Upon plaintiff's exception, the same judge held that upon a recasting of the account it will appear whether this exception is well taken. Defendants except to this *Page 90 
ruling upon the ground that it was hypothetical and inconsistent with his rulings upon defendants' exception. Upon such recasting it is made to appear that the said estate was solvent at the time when the payments were made; and, as we have held, upon consideration of the plaintiff's appeal, that the defendants ought not to be held liable as for a devastavit, on account of the circumstances of this case, it follows that the recasting of the account worked no harm to the defendants.
Exception 5 is to the ruling of MacRae, J., whereby the guardian was charged with the bond of T. W. Jordan, A. J. Jordan and F. S. Faison for the rent of the Potecasi land for 1873, due 1 January, 1874.
Flythe, the guardian, rented the Potecasi land for 1873 to T. W. Jordan, and took his note, with A. J. Jordan and F. S. Faison as sureties, for $200, due 1 January, 1874. At the time of the execution of (122) the note the sureties were reputed to be solvent, but in 1872 and 1873 large judgments had been taken and docketed against said Faison. The guardian found it necessary to sue these same parties in 1872 and 1875 in order to collect other rent notes out of them, but he failed to sue upon the note in question until 1876, when all the parties thereto were insolvent. A guardian is not an insurer, but he is required to use reasonable diligence. He had notice in this instance, for he had found it necessary to sue the same parties in 1872 and again in 1875; but he waited two years before taking legal steps to collect this note, and then the parties were insolvent. If he had acted with reasonable promptness he could have made the money. He should be held liable for its loss for the want of the exercise of ordinary care.
Exceptions 6 and 7. — The referee filed the post-bellum accounts of the guardian, showing a balance due Addie Harris 1 January, 1881, of $551.07, and a balance due Mary L. Coggins of $63 on 1 June, 1877.
The defendants excepted to this finding, for that in fact Mary L. received one-third instead of one-fourth of the rents of the Potecasi land. In this account the guardian was charged with one-fourth of said rents as that which should have been paid to Mary, but by some inadvertence the counsel for the guardian excepted upon the ground that he should have been charged with one-third of said rents, and the exception, by the same inadvertence, was sustained. The defendants' counsel, after the supplemental report, proposed to withdraw this exception and let the account stand as originally made by the referee. As it evidently was a mistake, this ought to have been allowed. There is no analogy between this and paying money under a mistake of law. These exceptions should be sustained.
The eighth exception is to errors in the account stated by the referee of S. J. Calvert, administrator of Newitt Harris. As we have held on the plaintiffs' as well as the defendants' appeal that the defendant *Page 91 
ought not to be held liable for a failure to sue the administration (123) bond on account of the alleged devastavit, this exception should be sustained upon the fifth ground.
All the exceptions having been disposed of, it follows that the defendants are not liable for the sum of $186.86. each and interest, the sum found to be in the hands of S. J. Calvert, administrator; that the plaintiffs' relator, Mary, is not entitled to recover of defendants the sum of $151.39, but that the defendant, Jesse Flythe, ought to have judgment against Mary L. Coggins for $17.21, with interest from 1 January. 1877, and that the relator, Addie, should have judgment against the defendants for the amount of their bond, to be discharged on the payment of $643.10, with interest thereon from 1 January, 1881.
Modified.
Cited: Shell v. West, 130 N.C. 173; Rich v. Morisey, 149 N.C. 49.