The defendant claimed the land under a grant from the State of North Carolina of recent date, and contended that the land was within the boundaries of Earl Granville's grant, which being antecedent to that under which plaintiff claimed, the latter conveyed nothing to plaintiff.
On the trial before Nash, J., it appeared that from the year 1753 acts of the Legislature of North Carolina had been passed, at various times, up to 1779, which acts call for and point out Earl Granville's line as the boundary between different counties; that in 1772 the line so called for by those acts had been actually run and marked as Granville's line by commissioners appointed for that purpose, and has ever since been reputed the line; but it did not appear how the line so run was ascertained to be Granville's line; nor did it appear to have been ascertained for any other purpose but that of marking the limits of the several counties bounded by it. The land in dispute lay to the northward (117) of the line run as Granville's, several miles.
The defendant proved that the latitude of the town of Lincolnton had been ascertained by observation, and that from Lincolnton to the Granville line extended would be about 2 miles going due north; and further, that from the observation which had been taken, the latitude of Earl Granville's line, as given in his grant, would make the line pass to the northward of Lincolnton between 2 and 3 miles.
On the part of the plaintiff it was contended that although the grant of Earl Granville called for a parallel of latitude as the southern boundary of the territory granted in it, yet it called also for other boundaries more certain in their nature and more easily ascertained, viz., Chickmacomack Inlet and the town of Bath; and that from a point north of Bath, as specified in the grant, Earl Granville's line was to be run west;* and that he could not be deprived of his land, unless it was shown that it lay to the northward of that line so run, which was denied to be the same with the line run and marked as Earl Granville's line.
It was further proved that, according to the maps examined by the witness (Mr. Mushat), the 35th degree of north latitude, measured on those maps by the scale upon them, was 12 miles to the south of the line laid down by them as the division line between the Carolinas; from the *Page 53 
35th degree of north latitude to the land in dispute (supposing (118) it to be due north from Lincolnton) would be 43 miles over hilly, broken ground; that the maps were not accurate, and that 34 minutes would measure 39 miles, and the witnesses could not say that the distance of 43 miles mentioned above would be more than 39 miles air measure.
The plaintiff, and those under whom he claimed, never had actual possession of the land, but, living in another county, the defendant had acted as his agent for many years in taking care of the land and paying taxes for it. Defendant admitted himself to be in the adverse possession.
The court charged that if the jury were satisfied that the land in dispute was within the chartered limits of Earl Granville's land, the plaintiff was not entitled to recover. There was a verdict for the defendant, and a new trial moved for on the ground that the jury should have been instructed that the mode by which the defendant ascertained the situation of Granville's line was not such as to entitle it to any weight in deciding the question where that line was; and further, that the jury should have been instructed that, although the land was to the north of Granville's line, yet the plaintiff was still entitled to recover, as the defect in his title was cured by the Bill of Rights.
A new trial was refused, and from the judgment rendered plaintiff appealed.
* "Bounded to the north by the line that divides Carolina from Virginia, to the east by the great western ocean, commonly so called, and as far southwardly as a cedar stake set upon the seaside in the latitude of 35 degrees and 34 minutes at north latitude, being 6 1/2 miles to the southward of Chickmacomack Inlet; from that stake, by a west line which passed 25 feet to the southward of the house wherein Thomas Willis liveth, and so west as far as the bounds of the charter granted to the lords proprietors of Carolina by his majesty, King Charles the Second, which west line went 1,660 poles to the north of the south end of Bath town."
In running a long line upon a parallel of latitude, the only mode of correcting the variation from the true line is to resort, from time to time, to observations.
HALL, J. I can see no objection to the charge given by the judge to the jury in this case. The question of fact was whether the lands in dispute lay within the boundaries of the lands granted by the king to Earl Granville; nor can I see any legal objection to the evidence (126) offered to the jury relative to that fact.
I would also think the question of law arising in the case free from doubt, if we take as true what the jury have found by their verdict, that is, that the land in dispute lies within the limits of Earl Granville's grant from the crown.
The plaintiff also claims title under a grant from the crown in 1768, subsequent to the date of Earl Granville's grant. As the king had conveyed title to the lands in dispute to Earl Granville, it follows that at the time of the grant to the plaintiff's father he had no title to the lands, *Page 54 
and of course could convey none. "For if he enters without title, or seizes land by a void or insufficient office, he is no disseizor; but if the king by letters patent grants land so seized, and the patentee enters, he is a disseizor, because he has time to inquire into the legality, which it is supposed the king has no leisure for." (Guilliam's Bac. Abr., "Prerogative," F., 3.) Therefore, as the plaintiff's pretensions to recover in this action rest solely upon the grant from the crown, he must fail; nor do I think his claim is in any respect bettered by the revolution in government which took place afterwards, when the State succeeded to the rights of the crown as well as to those of Earl Granville; because if, at that time, Earl Granville had not disposed of the lands, they still belonged to him, and, consequently, title to them vested in the State, and that title was not in any respect affected by any rights derived from the crown, because whatever right it once had to the lands, it had conveyed those rights to Earl Granville. For these reasons I think the rule for a new trial must be discharged.