Matthew Wallace, the plaintiff's testator, died in 1831, leaving a will, of which the following are the clauses upon which a construction is asked:
"3. I will and bequeath to my sister Catherine, all that body of land on which I now live, which is held by three several titles, adjoining the lands of Matthew B. Wallace and that of the estate of Alfred Wallace, deceased, Matthew Wallace and Wilson Wallace. I also bequeath to the same, another tract known as the Allen tract, adjoining the lands of Wm. Wallace, the old Fox place and the Stone House Lucky place. I also will the same sister my plantation which I purchased from John Wilson, adjoining, c., and any lot of land belonging to me not herein mentioned — the whole of which land I allow my sister Catherine to *Page 466 
have for her own use and benefit during her natural life time, and then to be disposed of as hereinafter provided for."
By the sixth clause of his will, the said testator directed as follows:
"It is further my will and desire, that at the death of my (577) sister Catherine, all the land and negroes herein bequeathed to my sister Catherine, with their increase, be sold on a credit of twelve months, and the proceeds of such sale to be divided as follows, viz: To my brother, John Wallace, one-fourth, if living; if not, to his children; one-fourth to James Wallace, sister Jane's son; one-fourth to my brother Wm. Wallace's children equally; and one-fourth to my sister Mary Wallace's children equally."
Catherine Wallace died in 1870, and the lands were sold by plaintiff as directed, the proceeds being in the hands of plaintiff ready for distribution.
John Wallace, the brother above mentioned, survived the testator, but died in the life time of Catherine. Jane, the wife of the defendant, J. B. Johnston, and others, are the children of the said John. The defendant, John R. Wallace, is a son of Matthew A, deceased, who was also a son of the said John, and who survived his father, but died in the life time of Catherine. He represents a class.
William Wallace, another brother above mentioned, died in the life time of the testator, leaving children who were living at the death of the said Catherine, and also grand children.
Elizabeth, wife of defendant, John Wilson, is a daughter of the sister Mary above spoken of, who with others of the same class also survived the said Catherine.
There are other children and grandchildren of the brothers and sisters mentioned in the will, whose relationship is fully set out and fully explained in the opinion of Chief Justice PEARSON.
His Honor, after argument, adjudged:
1. That the one-fourth part bequeathed to John Wallace, was contingent, upon his surviving his sister Catherine. He having died before her, the fourth vested in those of his children living at the death of the said Catherine. That the defendant, John R. Wallace, and the class represented by him, being grandchildren whose parents (578) died before Catherine, are entitled to no part of this fourth.
2. That the bequest of one-fourth to my brother, Wm. Wallace's children equally, is to be paid to such of his children, as were alive at the death of Catherine. That the defendant, Samuel W. Wallace, and the class represented by him, not falling within that description, are entitled to no portion of said fourth as legatees.
3. That the fourth bequeathed to Mary Wallace's children, be *Page 467 
distributed between such of her children as were alive at the death of Catherine, and that the defendant, Robert B. Wallace and the class represented by him, not falling within said description, being grandchildren, are entitled to no portion thereof.
4. That James Wallace being an illegitimate son of Jane, a sister of the testator, took a vested interest in one-fourth of the property bequeathed, and the same being ordered to be sold for distribution between the legatees, is to be considered personal estate; and that this fourth did not escheat to the University of North Carolina, but should be paid to his personal representatives, to be divided between those who may be entitled thereto.
From which judgment the defendants appealed.
Owing to the number of classes and the many individuals composing the classes, at the opening of the case, it seemed to be very complicated. Upon examination, we find there is really no difficulty presented by the provisions of the will, and the only matter is to "call the roll," and let each man take place in his company, a task which I will not undertake, leaving it to be performed by a reference.
1. The will directs a sale of the land at the death of the testator's sister, Catherine, the proceeds of sale to go into the common fund, thus the land is converted into personal estate. (579)
2. John Walker, the brother of the testator, died before the termination of the life estate to his sister Catherine, so it is the same, as if he had not been referred to, and the legacy is "to the children of his brother John."
3. So we have a fund — one fourth to the children of John, one-fourth to the children of William, and one-fourth to the children of Mary. The Mode of distribution is settled. See Iredell on Executors, and Williams on Executors.
When a legacy is given to a class — as to the children of A, with no preceding estate, only such as can answer to the call at the death of the testator can take, for the ownership is then to be fixed, and the estate must devolve upon those who answer the description. So children of A, born after the death of the testator, are excluded, as are also the children of a child of A, such child having died before the testator, for these children of a child of A, do not fill the description. *Page 468 
But when there is a preceding life estate so that the ownership is filled for the time, and there is no absolute necessity to make a peremptory call, for the takers of the ultimate estate, the matter is left open until the determination of the life estate, with a view of taking in as many of the objects of the testator's bounty, as come within the description and can answer to the call, when it is necessary for the ownership to devolve and be fixed.
It follows that all of the children of John, William and Mary, who were living at the death of the testator, or who were born before the legatee for life, had vested interests and the shares of any who died between the death of the testator and the death of the legatee for life, devolved upon their personal representative.
It also follows that no child born after the death of the legatee for life could have taken, for the door was closed by that event. There are no such claimants in this case, but the argument required (580) a reference to them.
It also follows that the children of any child of John, William or Mary, whose parent was dead at the death of the testator, cannot take, for the child of a child does not answer the description, and we cannot add the words, "the children of any child who is now dead," although we have no doubt the testator, if he had thought about it, would have added those words, for he was distributing by classes, and the children of a deceased nephew or niece, by representing the parent, would bring themselves up to that class; but this right of representation is not provided for, and we cannot supply the omission.
4. We think the University is entitled to the one-fourth part, given to "James Walker," his sister Jane's son.
James was a bastard, and died intestate and without children, and has no kin. By the common law a bastard was nullius filius, he was the child of no one in contemplation of law; and even his mother was not supposed to be kin to him.
This rigidness of the common law has been relaxed by statute, so as to recognize the brothers and sisters of a bastard and his mother, as being of kin to him; but it cannot be extended, by even a strained construction, to the children of the brothers and sisters of his mother.
The judgment in the Court below will be modified according to this opinion, and the case will be remanded to the end that a reference may fix the amount of the fund, and may ascertain the individuals entitled to take under the several classes, and the amounts to be paid to each; *Page 469 
and that the deceased children may be represented by an administrator, who will pay debts, if any, and distribute according to law.
Judgment modified. Costs to be paid out of the fund.
PER CURIAM. Judgment accordingly.
Cooper v. Ex Parte, 136 N.C. 132; Sawyer v. Toney, 194 N.C. 343;Sharpe v. Carson, 204 N.C. 515; Beam v. Gilkey, 225 N.C. 524; Robinson v.Robinson, 227 N.C. 157; Cole v. Cole, 229 N.C. 762.