JOHN C. SHARPE, ADMINISTRATOR D. B. N. OF LUTHER DALTON, DECEASED, v. MART CARSON ET AL.

(Filed 12 April, 1933.)

**1. Descent and Distribution B c—**

Under statutory modification of the common law, the mother and brothers and sisters of a bastard may inherit from him, but the rule extends no further, and the brothers and sisters of the bastard's mother may not inherit from him.

**2. Insurance N a—Proceeds of War Risk Insurance held to escheat to the University under the facts of this case.**

In an action to determine conflicting claims to the proceeds of War Risk Insurance in the hands of the deceased soldier's administrator it appeared that the soldier was a bastard, and that the funds were claimed by the brothers and sisters of the soldier's mother, the U. S. Government, and the University of North Carolina, the deceased soldier's wife being incapable of claiming the funds because of marital misconduct. Judgment was entered in the lower court in favor of the soldier's uncles and aunts, and the Government did not appeal. Upon the University's appeal it *is held:* the uncles and aunts of the deceased soldier are incapable of inheriting from him, and the funds escheat to the University, and the rights of the Government under Title 38, U. S. C. A. need not be determined, the Government not having appealed, nor can the Government's rights be set up by the uncles and aunts to defeat the University's claim.

**3. Appeal and Error F d—**

Where the U. S. Government, claiming the proceeds of War Risk Insurance under section 514, Title 38, U. S. C. A., does not appeal from a judgment in favor of certain individual claimants, and on appeal it is decided that the funds escheat to the University, the question of whether the Government is estopped by the judgment is not presented for decision on the record.

CIVIL ACTION, before *MacRae, Special Judge,* at February Term, 1932, of IREDELL.

Luther Dalton, a soldier, died on or about 1 October, 1918, covered by a policy of War Risk Insurance in the amount of $10,000. The beneficiary named in the policy was Will Dalton. Will Dalton died on 21 February, 1929. Thereafter, John C. Sharpe, the plaintiff, was appointed administrator, *d. b. n.* of the estate of Luther Dalton, the de-

17—204

ceased soldier. Said administrator has in his hands for distribution, arising from said policy, the sum of $4,580.33, and instituted this action for the purpose of settling said estate and distributing the money. Luther Dalton, the soldier, was the illegitimate son of Isabel Carson, who predeceased him, and he changed his name from Carson to Dalton. In 1912, Luther Dalton married Daisy Allen. They separated soon after the marriage and Daisy Dalton died on or about 25 February, 1921, leaving no children born to her as a result of the union.

At the time of his death the soldier left no surviving children, mother, brothers, sisters, or the descendants of such, but he left the defendants, Mark Carson and William Carson, uncles, and Maria Martin, an aunt, and the children of an uncle, Thomas Carson, who died in 1917, and the children of an aunt, Mollie Carter, who died in 1927, and other children of uncles and aunts.

When the suit was instituted various claimants came into court in order to get the money.

(1) Some of the petitioners, who were the children of Thomas Carson, a deceased uncle, assigned their interest in the estate of Nick Dalton.

(2) The uncles and aunts and the children of deceased uncles and aunts, both legitimate and illegitimate, filed an answer claiming the fund.

(3) A. D. Folger, administrator of Daisy Dalton, the deceased wife, filed an answer claiming the fund.

(4) The University of North Carolina was duly made a party to the cause and claimed the fund upon the theory of an escheat.

(5) The United States of America filed an answer claiming the fund by virtue of section 514, Title 38, War Veterans Act.

Daisy Dalton, the wife of the soldier, was living at the time of his death, but it was alleged that by reason of misconduct on her part she had forfeited her right to share in the estate of her husband.

The following issues were submitted to the jury:

1. "Did Daisy Dalton, wife of Luther C. Dalton, elope with an adulterer?"

2. "Did the said Daisy Dalton, wife of Luther Carson Dalton, wilfully and without just cause abandon her husband and refuse to live with him and was not living with him at the time of his death?"

The jury answered both issues "Yes."

Upon the verdict judgment was entered directing that the estate be distributed in seven equal shares to the living uncles and aunts of the deceased and the children of deceased uncles and aunts.

From the foregoing judgment A. D. Folger, administrator of Daisy Dalton, the United States of America, and the University of North Carolina appealed.

However, these appeals were not perfected, and the only appellant before the Court is the University of North Carolina.

*J. W. Van Hoy and Buren Jurney for University of North Carolina.*
*Manly, Hendren & Womble, W. A. Bristol and DuBose & Weaver for distributees of Luther Dalton.*

BROGDEN, J. ‵Two questions of law are presented for decision:

1. Are the brothers and sisters and representatives of deceased brothers and sisters of the mother of a deceased illegitimate soldier, the next of kin of such soldier, and thus entitled to the proceeds of the insurance in the hands of the administrator?

Before this Court was ten years old as a separate and independent entity of government, it had occasion to discuss the legal status of a bastard, in the case of *Kimborough v. Davis,* 16 N. C., 71. *Taylor,* the first *Chief Justice,* said: "According to the law of England, bastards are incapable of being heirs. They are considered as the sons or children of nobody, and no inheritable blood flows to their veins, and therefore, if there be no other claimant than such illegitimate children, ‵the land shall escheat to the lord. They can have no other heirs than the issue of their own bodies; for as they are considered the children of nobody, there can be no ancestors by whom a kindred or relation can be made. The reason of excluding them from the right of inheritance, is on account of the uncertainty of their ancestors. But our Legislature, wisely considering that this rule ought not to extend to cases where there is no uncertainty, as the mother of a bastard, has made them inheritable to their mothers, and to each other." In like vein *Pearson, C. J.,* spoke in *Walker v. Johnston,* 70 N. C., 576, saying: "We think the University is entitled to the one-fourth part, given to ‘James Walker,’ his sister Jane's son." James was a bastard, and died intestate and without children, and has no kin. By the common law a bastard was *nullius filius,* he was the child of no one in contemplation of law; and even his mother was not supposed to be kin to him. This rigidness of the common law has been relaxed by statute, so as to recognize the brothers and sisters of a bastard and his mother, as being of kin ‵to him; but it cannot be extended, by even a strained construction, to the children of the brothers and sisters of his mother." Also, *In re Estate of Damon Bullock,* 195 N. C., 188, 141 S. E., 577, *Stacy, C. J.,* said: "True, it is provided by C. S., 140, that every legitimate child of a mother dying intestate shall be considered among her next of kin, and as such shall be entitled to share in her personal estate; and, further, that illegitimate children, born of the same mother, shall be considered legitimate as among themselves, but this is as far as the statute goes." See, also, *Powers v. Kite,*

83 N. C., 156; *Bettis v. Avery,* 140 N. C., 184, 52 S. E., 584; *In re Estate of Wallace,* 197 N. C., 334, 148 S. E., 456. The *Walker case, supra,* expressly decides the proposition of law in controversy relating to the right of uncles and aunts and the issue of such to distributive shares in the estate of the deceased soldier.

The collateral claimants, however, contend that the *Walker case* must be read in connection with chapter 64, part 2, sections 5 and 6. The *Walker case* was decided in January, 1874. Battle's Revisal went into effect on 1 January, 1874, and chapter 45, sections 107 and 108 thereof, is practically identical with C. S., 140. Manifestly, it is to be assumed that the Court had in mind the statute existing at the time the decision was rendered.

However, the claimants assert that the University of North Carolina has no interest in the cause of action or in the proceeds of the insurance by reason of the proviso in section 514, Title 38, U. S. C. A., which is as follows: "In cases when the estate of an insured would escheat under the law of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of 6 October, 1917." Consequently, it is argued that the money belongs to the United States by express provision of the Federal statute, and hence the University has no standing in court.

The United States of America was a party to the action. A judgment was rendered by a court of competent jurisdiction and the United States did not appeal. Furthermore, the proviso of said section 514 declared that if the estate of the insured was subject to escheat, "the insurance shall not be paid to the estate but shall escheat to the United States," etc. The money was paid by the Federal Government to the administrator of the insured. A serious question would arise if it were necessary in this case to determine how far the sovereign is estopped by a judgment of a court of competent jurisdiction or as to whether estoppel or waiver can be asserted against the Federal Government by virtue of the fact that the money was actually paid to the estate of the insured. See *Taylor v. Shufford,* 11 N. C., 116; *Candler v. Lunsford,* 20 N. C., 542; *Wallace v. Maxwell,* 32 N. C., 110; *S. v. Williams,* 94 N. C., 891.

Such a question is not now before this Court. The only appellant is the University of North Carolina, and the solution of the case depends upon the relative rights of the University and of the collateral claimants of the deceased upon the present record. Upon such record the Court concludes that the University of North Carolina is entitled to the fund, subject, however, to the payment of costs and other expenses and charges duly allowed by the court.

Reversed.