ROBERT L. COLE, ADMINISTRATOR C. T. A. OF THE ESTATE OF A. B. COLE, DECEASED, AND ROBERT L. COLE, INDIVIDUALLY, v. ELIZABETH S. COLE, KATE COLE RANCKE, HANNAH PICKETT RANCKE ATKINSON AND HUSBAND, HAL W. ATKINSON, WALTER F. COLE, JR., AND WIFE, ELEANOR MYERS COLE, ANN W. COLE BOYD AND HUSBAND, KEN BOYD, CATHERINE COLE, ROBERT LEAKE STEELE COLE AND WIFE, MARY GREGG COLE, ROBERT LEAKE STEELE COLE, JR., A MINOR, CHARLES STUART COLE, A MINOR, ROBERT LEAKE STEELE COLE, GENERAL GUARDIAN FOR SAID MINORS, AND THE UNBORN CHILDREN OF ROBERT LEAKE STEELE COLE AND WIFE, MARY GREGG COLE, BY THEIR GUARDIAN AD LITEM, G. S. STEELE.

(Filed 4 February, 1949.)

1. **Appeal and Error § 51b—**

   A subsequent decision cannot, by mere implication, be held to overrule a prior case unless the principle is directly involved and the inference clear and impelling.

**2. Wills § 34c—**

The rule that where a testamentary gift is made to a class, without creation of a preceding estate, only those living or *en ventre sa mere* at the time of the death of the testator may take, *is held* to create a rebuttable presumption only, which will yield to a contrary intention expressed by the testator so long as such intent is within the rule against perpetuities and is not prevented by any statutory rule of construction.

**3. Same—**

Testator devised realty together with the contents of the house thereon to his grandnephews "and any other children who may be born to" his nephew and his nephew's wife. *Held:* The beneficiaries are not limited to members of the class *in esse* or *en ventre sa mere* at the time of testator's death, but the devise is to all members of the class born to the persons specified as ancestors until the possibility of issue becomes extinct by the death of either of them, in accordance with the expressed intent of testator.

**4. Same—**

Where a devise to a class embraces an executory devise to those who may later be born into the class, those living at the date of testator's death take in their representative capacity, and they are not required to account for rents and profits in the interim before the subsequent enlargement of the class by the birth of others, but the arrival of the newcomers has the effect of merely defeating their interest *pro tanto.*

APPEAL of guardian *ad litem* for the unborn children of Robert Leake Steele Cole and Mary Agnes Cole, from *Armstrong, J.,* holding the courts of the 13th Judicial District, in Chambers at Troy, on 21 August, 1948.

This action was brought by the plaintiff as administrator *c. t. a.* of the estate of A. B. Cole, and in his individual right, against various interested parties, to secure a declaratory judgment construing a part of the will as to which some doubt had arisen affecting the administration. The item directly concerned reads as follows:

"Item V. I will devise and bequeath to my beloved nephews and any other children who may be born to Robert and Peg Cole, my house and lot at 301 Fayetteville together with the contents and the lot west of the home on Fayetteville Road."

The will was written 27 April, 1945. Cole died 10 January, 1948. At the time the will was written and at his death the testator had three nephews: Robert L. Cole, Robert Leake Steele Cole (referred to in the will as Robert Cole and Robert S. Cole), and Walter F. Cole, Jr. At the time the will was written, and at his death, the testator had three grand nephews, minor children of Robert Leake Steele Cole and wife, Mary Gregg (Peggy) Cole, and a fourth child of Robert and Peg was *en ventre sa mere,* and was born 10 May, 1945.

At the time of testator's death there was in the house described in the above item of the will a metal safe containing choses in action, securities, and intangibles, including a trailer patent, in all worth approximately $47,000.00. The residuary clause of the will left the remainder of the property, except that specifically given, to the eight nieces and nephews of the testator.

No other children have been born to Robert and Peggy Cole since testator's death.

The controversy was submitted to Armstrong, J., holding courts of the 13th Judicial District, at Chambers in Troy, 21 August, 1948, who, by consent of parties, found the facts upon the pleadings and admissions, made his conclusions of law, and entered judgment.

The court below dealt with three phases of the controversy: (a) Whether by the reference to "nephews" in Item V the testator intended to designate his grand nephews the children of Robert S. and Peggy Cole; (b) whether in his reference to the "contents" of the house devised in that item he intended to include the contents of the metal safe, i.e.. the $47,000 securities and other intangibles it held; (c) whether the devise in Item V was intended to include children born to Robert and Peg after testator's death.

With aid of some reconciliation of views on the part of the litigants, expressed in the pleadings, the first two problems of construction have been eliminated (except as hereinafter noted). The appeal is concerned only with the third. From the adverse judgment construing the devise in Item V to include only the children in esse at the death of the testator, the guardian ad litem for the unborn children appealed.

*G. S. Steele, guardian ad litem for the unborn children of Robert Leake Steele Cole and Mary Gregg Cole, appellant.*

*Thomas H. Leath, A. A. Webb, and Hudgins & Adams for appellees.*

Seawell, J. We have left for solution what seems to be the most troublesome problem dealt with by the court below: Whether the testator intended to include as beneficiaries under Item V of the will, above copied, only the children of Robert and Peggy Cole born, or to be born, prior to his death, or en ventre sa mere, or to include, as well, any and all children born to them at any future time before or after his death, and whether that intention may prevail over rules of construction contended for by appellees. The directness of the issue depending upon the force and effect of the rule of construction invoked seems to demand a more specific, however brief, discussion of its nature and application than we find in our own decisions.

It is difficult to conceive how the testator could have used more comprehensive or all-inclusive language to express the intent that all the

Cole *v.* Cole.

children born to Robert and Peggy Cole, regardless of his own span of life, should share in his bounty. The rule widely accepted, however, is that when a testamentary gift is made to a class, with no preceding estate, only those of the class living or *en ventre sa mere* at the time of the death of the testator may take. 57 Am. Jur., Wills, 1275; Page on Wills (Lifetime Ed.), Sec. 1053; Thompson on Wills, 3rd Ed., sec. 301; *Wise v. Leonhardt,* 128 N. C. 289, 38 S. E. 892; *Sawyer v. Toxey,* 194 N. C. 341, 139 S. E. 692. This is sometimes referred to as the "rule of convenience." Page on Wills, sec. 1053, p. 224; Jarman on Wills, Vol. 2, p. 1665; Restatement, Property, Future Interests, Ch. 22, Class Gifts. It is obviously based on the inconveniences of administration, distribution, or enjoyment of those presently let into possession by the immediacy of the gift, especially the uncertainties attending enjoyment and restriction on alienation, all of which might be obviated by a rule which closes membership in the class by calling the roll at the death of the testator, so that the owners, and the extent of their property rights, may then be ascertained without waiting for future members of the class, or cotenants who may never arrive. The "convenience" promoted by its application is that of the class members first taking and not that of the members excluded, or even of the testator who may have wished them to share.

The term "rule of convenience" aptly indicates its origin, its *raison d'etre;* but it argues little for its engraftment on the most fundamental canon of will construction,—that of finding the intent of the testator from the will,—since the inconveniences implied are objective and not necessarily connected with subjective intent.

Since these inconveniences are, as we have said, objective, and only by astute reasoning can be related to the intent, the assumptions which have been made to affiliate the rule with the intent of the testator have been challenged as unreal,—as devices carrying only the camouflaged expression of a public policy modifying or destroying the intent. One of the assumptions involved in applying the rule is that the average man in making a will would hardly intend to leave his property in such an anomalous or unsatisfactory condition; or at least that propriety would not be offended by a presumption to the contrary. Page on Wills, sec. 4. Frankly there is no evidence that the average man ever made a will or ever will; and the standardization is open to the criticism that it ignores both the intelligentsia and those of humbler comprehension, just able to know their property, the objects of their bounty, and the effect of the disposition which they are making. And it is safe to say that the difficulties presented as a basis of the rule are the inconveniences to the members of the class earlier admitted and would appeal more strongly to the legalistic mind than that of the layman making the will. "In theory, at least, the determination of membership in a class is a matter of construction; that

is, if the testator clearly states his intent as to the time a maximum or minimum membership is to be determined, that statement controls. *Rules as to the determination of classes are simply rebuttable presumptions.* However, here, as in many other situations calling for constructions, it is improbable that the testator has thought of the problem which subsequently arises. Hence it is futile to talk of his intent. What we are doing is either determining what the testator would have done had he thought of the situation with which the Court was confronted, or else apply a rule of construction based on public policy." Simes, Future Interests, Part II, Sec. 372, *et seq.*

Many of the terms used in cases following the rule,—"administration," "distribution," "demand," are more appropriate to bequests of personalty than to devises of realty; and with such a testamentary disposition it may be said that the need of the rule is much more apparent than in case of a devise. "On the application of the rule to realty, the authority is slight." Simes on Future Interests, Part II, p. 146, sec. 382. But little discrimination is apparent in the use of the terms applied. It is worth while to note, however, that the majority of the older cases in our jurisdiction exemplifying the rule deal with bequests of personalty and not infrequently speak a language of necessity appropriate to that subject. This itself by eliminating difficulties to administration and distribution suggests a cleavage in treatment between bequests and devises.

The most troublesome problem dealt with by the courts has been the question of the accumulation of profits or income *ad interim.* In this we might well follow the analogy of *Shepherd v. Ingram,* Amb., 448, holding, under comparable facts of that case, that those previously let into possession and enjoyment are not required to account for rents and profits accruing pending the birth of others entitled to share in the devise, the earlier takers being in the position of holding interests *pro tanto* defeasible. There is no necessity, therefore, of giving bond as suggested in the cited cases on bequests of money or personalty, or uncertainty as to the extent of the enjoyment.

These observations are not directed toward abrogation of the rule but toward its more considerate application, and the greater propriety of yielding to the contrary intent of the will, in particular cases when clearly expressed. Restatement, Property, Future Interests, 3 and 4, sec. 294, p. 1574; Simes, Future Interests, *supra,* sec. 372 *et seq.* "The rule usually defeats the intent of the testator and the tendency of the courts is not to apply it unless it is necessary." Jarman, Wills, p. 1665. Nevertheless in the jurisdictions adopting it, the rule has been variously stated and applied with different degrees of strictness. We have to determine in the instant case whether in this jurisdiction the rule, however evolved, presents an insuperable barrier to the intent and in its strict application

may have become a rule of property binding as *stare decisis;* and if not, then what effect it may have upon the present devise.

There are many cases in our records which may be regarded as holding the rule contended for by the appellees as merely presenting a rebuttable presumption which may be overthrown by a clearly expressed intent which has been permitted to prevail. *Roper v. Roper,* 58 N. C. 16, 75 Am. Dec. 427; *Shull v. Johnson,* 55 N. C. 202; *Shinn v. Motley,* 56 N. C. 490; *Pickett v. Southerland,* 60 N. C. 615. Cited as *contra* are *Petway v. Powell,* 22 N. C. 308; *Walker v. Johnston,* 70 N. C. 576, 579; *Robinson v. McDiarmid,* 87 N. C. 455, 461; *Wise v. Leonhardt, supra; Sawyer v. Toxey, supra;* and many English decisions found in accord.

Appellees rely on *Wise v. Leonhardt* and *Sawyer v. Toxey* as overruling earlier decisions. *Wise v. Leonhardt* uniquely seats the rule on the theory that otherwise the title, *ad interim,* must float *in nubibus;* disregarding the principle that the class might vest by representation when those living at the death of the testator answered the class description.

Typical of the apparent uncertainty in the trend of decisions from which we are compelled to draw the answer to our problem we find in *Mason v. White,* 53 N. C. 422 (the subject was a legacy), the rule stated with positiveness by *Chief Justice Pearson,* speaking for the Court, and without qualification; but in *Shull v. Johnson, supra,* while the personnel of the Court was still the same, and again in *Shinn v. Motley, supra,* reported in the following volume (56), it was unanimously held that such a testamentary disposition was good.

Following these cases through the reports we find that construction has alternately tolerated and rejected conditions supposedly offensive to the rule without much expatiation on its force, effect or conclusiveness. Generally speaking, this can be inferred only from the circumstances of its application or the vigor of its assertion.

This is hardly enough to produce the conviction that the former cases have been overruled. A subsequent decision cannot, by mere implication, be held to overrule a prior case unless the principle is directly involved and the inference clear and impelling. We are not satisfied that the cases cited as having that effect can be held to justify us in wholly abandoning the intention of the will, clearly expressed, as a factor in construction, or that a reconciliation of authority cannot be made.

The determination of the maximum or minimum membership in the class to which the testator's bounty is directed is a substantial and important testamentary right, a property right, which ought not to be destroyed or abridged except through public necessity combining with clear authority.

We are led to the conclusion that we are dealing with a rebuttable presumption only; and that so long as the testator is within the rule against

perpetuities and is not prevented by any statutory rule of construction, and when the intention to do so clearly appears, he may, without the creation of a preceding estate, make a class devise or bequest, of the character with which we are dealing, which may carry the gift beyond his death; and as in the instant case include all members of the class born to the persons specified as ancestors until the possibility of issue becomes extinct by the death of either of them. We think the language employed in this will, in its ordinary acceptation, is broad enough with respect to its futurity, nothing else appearing, to accomplish that purpose.

Introducing matter extraneous to the will on the question of intent, the appellees on the one hand argue that the language used by the testator is persuasively within the "rule of convenience," because he must have known the fact that Peg Cole was at the time *enceinte,* since she was a frequent visitor at his home, and that the provision for "any other children who may be born to Robert and Peg Cole" must have referred to this unborn child. And in favor of the opposite interpretation, the appellant points out that the devise was of the ancestral home of Robert and Peg, which had been acquired by the testator, and that he was in this devise giving the house back to the descendants of the original owner, amongst whom there was no reason to discriminate.

It is frequently said that in the judicial interpretation of a will every case must stand on its own bottom. We refrain from detailed discussion and comparison of the language used in the cited cases in making the devises and bequests, some of which are comparable and some disparate, although we have given them careful attention.

We are satisfied from the language of the will and the circumstances under which it was executed that it was the intention of the testator to extend his bounty to all the members of the described class which might at any subsequent period be born to Robert and Peg Cole and that the class membership may not be closed until the possibility of afterborn children is extinct through the death of one of these ancestors.

We do not know how long the inconveniences pointed out in the brief may be suffered by the devisees. The testator no doubt may have understood from the common experience of man that the period of gestation might be fixed at 10 lunar months; but he would hardly be supposed to have appreciated the naiveté of the law, which still refuses to be advised, but contrary to human experience accepts the possibility of issue as long as there is life.

The modern attitude toward future interests is different from that which obtained when this rule was evolved. The appellees, however, point out that no relief can be had on that score since G.S. 41-11 does not apply to this situation. Probably, however, if a sufficiently important public necessity is involved, the extension of legislative relief of more general

application might be indicated rather than an arbitrary judicial adjustment.

There are certain other modifications of the judgment below upon which all the parties are agreed and which seem to us to be justified as a proper construction of the will.

The judgment below, it is agreed, inadvertently failed to include the safe (not, however, its contents) as passing with the dwelling; and the parties are in accord in so interpreting the will. We think this is a proper construction, and the judgment will be modified in that respect. It will be further modified in accordance with the construction we have herein given to Item V.

The cause is remanded to the Superior Court of Richmond County for judgment in accordance with this opinion.

Modified and affirmed.