[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Kelly and William Wildman, as Co-Administrators of the Estate of Lee Wildman, and Kelly Wildman, individually, have filed a six count amended complaint against the defendants, Connecticut Allergy and Asthma Associates, P.C., Paul M. Goldberg, M.D. and John Willis, M.D. The complaint alleges medical malpractice, bystander emotional distress, and loss of filial consortium
The plaintiffs allege the following facts in their amended complaint. The plaintiffs were the parents of Lee Wildman. In July of 1991, the defendant Goldberg began CT Page 6658 treating Lee for asthma and hypersensitivity to tree pollen. At that time, Lee was six years of age and had had a history of asthma from age two. In August 1993, Dr. Goldberg began treating Lee with an allergenic treatment to reduce his sensitivity to tree pollen. In September 1994, Dr. Goldberg prescribed allergy medicine in three different concentrations to be administered by another physician. The following month, Kelly Wildman (the plaintiff) took Lee to Dr. Willis, who injected the allergy medication which she had obtained from Dr. Goldberg. Shortly thereafter, Lee complained that he could not breathe and began to turn blue. The plaintiff returned him to Dr. Willis who attempted to resuscitate him. Lee was transported to St. Vincent's Hospital, then to Bridgeport Hospital, where he lapsed into a coma and subsequently died on October 28, 1994.
The defendant Goldberg has filed a motion to strike counts three and five of the plaintiffs' amended complaint which allege bystander emotional distress and loss of filial consortium. The defendant contends that bystander emotional distress is not recognized in the context of a medical malpractice action, and that loss of filial consortium is not recognized in Connecticut.[1]
 I
The defendant Goldberg contends that Connecticut does not recognize a cause of action based on bystander emotional distress in the context of a medical malpractice action. The plaintiff disagrees. Goldberg relies upon Maloney v. Conroy,208 Conn. 392, 545 A.2d 1059 (1988) and Amodio v.Cunningham, supra, 182 Conn. 80, for his assertion that Connecticut does not recognize bystander emotional distress in the context of medical malpractice. The plaintiff relies onClohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852 (1996), in which the Connecticut Supreme Court recently recognized a cause of action in bystander emotional distress provided certain limiting elements are satisfied. "[A] bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in CT Page 6659 the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Id., 56.
The answer to this issue is not as crystal clear as the parties would have it. On the one hand, Clohessy appears to articulate a universal test for a claim of bystander emotional distress. On the other hand, in Maloney v. Conroy, supra,208 Conn. 393, the Supreme Court handed down a clear, "bright line" holding that "a bystander to medical malpractice may not recover for emotional distress. . . ." Although in Clohessy
the court declared: "we now overrule Strazza [v. McKittrick,146 Conn. 714, 156 A.2d 149 11959)] to the extent that it conflicts with our opinion in this case"; Clohessy v.Bachelor, supra, 237 Conn. 46; the court did not thus expressly overrule Maloney. To the contrary, the Clohessy
court remarked that "[t]he problem [with a cause of action for bystander emotional distress] is compounded when the underlying act of negligence with respect to the victim is medical malpractice because there generally is no significant observable sudden traumatic event by which the effect upon the bystander can be judged." Clohessy v. Bachelor, supra,237 Conn. 44. This observation, in and of itself, would seem togenerally preclude a claim for bystander emotional distress in the medical malpractice context for failure to satisfy the second condition laid down by Clohessy for maintaining such an action: "the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location . . . ." Id., 56; see Shaham v.Wheeler, Superior Court, Judicial district of Danbury, No. 321879 (June 26, 1996) (Moraghan, J.).
In order to determine whether Clohessy overrules Maloney
it is necessary to further examine the anatomy of each decision.
In Clohessy, the issue was "whether a parent and a sibling can recover damages for the emotional anguish they sustained by witnessing the parent's other young child being fatally injured as a result of an [automobile] accident caused CT Page 6660 by the negligence of the defendant." Id., 32. After stating the facts giving rise to the litigation; id., 33-34; the Supreme court reviewed Strazza v. McKittrick, supra,146 Conn. 714, Amodio v. Cunningham, supra, 182 Conn. 80, and Maloney v.Cunningham, supra, 208 Conn. 392. See Clohessy v. Bachelor,
supra, 237 Conn. 34-38. The court then discussed the two principal schools of thought that had emerged subsequent toStrazza in support of allowing bystanders a cause of action for emotional distress — "zone of danger" and reasonable foreseeability. In the context of this discussion, the court discussed the pure foreseeability rule of Dillon v. Legg,68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968), and the subsequent limitations imposed on that rule imposed in Thingv. La Chusa, 48 Cal.3d 644, 771 P.2d 814, 257 Cal.Rptr. 865
(1989).
The Clohessy court then stated: "Although we discussedDillon at length in both Amodio and Maloney, in neither case did the factual scenario present the court with an opportunity to make a definitive ruling on whether to recognize a cause of action for bystander emotional distress. Central to this courts concern in Amodio and Maloney was that `the etiology of emotional disturbance is usually not readily apparent as that of a broken bone following an automobile accident . . . .'Maloney v. Conroy, supra, 208 Conn. 397. The problem is compounded when the underlying act of negligence with respect to the victim is medical malpractice because there generally is no significant observable sudden traumatic event by which the effect upon the bystander can be judged. For this precise reason most courts have recognized that a cause of action for bystander emotional distress must be confined in order to avoid limitless liability. `Without such perception, the threat of emotional injury is lessened and the justification for liability is fatally weakened.' Portee v. Jaffee, 84 N.J. 8899, 417 A.2d 521 (1980)." Clohessy v. Bachelor, supra,237 Conn. 44. Said the court: "This case affords us with an opportunity to reexamine this courts holding in Strazza inlight of Amodio and Maloney and the law regarding bystander emotional distress that has developed over the last four decades. Strazza did not provide this court with an analysis for rejecting bystander emotional distress; rather, the court relied on the state of the law in other jurisdictions at that time in arriving at its conclusion." (Emphasis added.) Id.
The court in Clohessy proceeded to find that "a CT Page 6661 tortfeasor may owe a legal duty to a bystander" and overruledStrazza. Clohessy v. Bachelor, supra, 237 Conn. 46. The court stated that "bystander emotional distress is reasonably foreseeable," that, as a matter of public policy, "`the interest in personal emotional stability is worthy of legal protection against unreasonable conduct'" and that "`protecting these emotional interests outweighs an interest against burdening freedom of conduct by imposing a new species of negligence liability.'" Id., 46-47. "In drawing this conclusion, we have carefully weighed various public policy factors, including social and financial costs associated with recognizing this cause of action." Id., 46. The court then adopted the reasonable foreseeability rule subject to four conditions which it went on to discuss in detail. Id., 47-51.
In Maloney v. Conroy, supra, 208 Conn. 392, the plaintiff sought damages from two physicians and a hospital for severe emotional disturbance alleged to have resulted from the malpractice of the defendants in treating her mother. Id.,
393. The court agreed that the plaintiff's complaint stated a cause of action for emotional disturbance under the rule ofDillon v. Legg, supra, 68 Cal.2d 728, as further liberalized in Ochoa v. Superior Court, 39 Cal.3d 159, 703 P.2d 1,216 Cal.Rptr. 661 (1985). Maloney v. Conroy, supra,208 Conn. 397. Nevertheless, after reviewing the recent developments in this area of the law the court stated: "Whatever may be thesituation in other contexts where bystander emotionaldisturbance claims arise, we are convinced that, with respectto such claims arising from malpractice on another person, we should return to the position we articulated in Strazza that `there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another.'Strazza v. McKittrick, supra, [146 Conn.] 719." (Emphasis added.) Maloney, supra, 208 Conn. 402. But the rationale for the holding in Maloney was not a rejection of the reasonable foreseeability or zone of danger tests, nor, despite the rhetorical reference, a re-embracing of Strazza. Rather, the basis for the holding in Maloney was that court's conviction that
 To allow recovery by one, like the plaintiff, who has been more or less constantly `at the bedside' of the malpractice victim during the period of treatment is likely to cause hospitals and other medical treatment facilities to curtail CT Page 6662 substantially the extent of visitation of patients that is presently permitted. Such a response by providers of medical care to the risk of liability to visitors whose sensitivity and relationship to the patient may result in emotional disturbances from observing treatment of loved ones that they view as improper would seem inevitable if such claims were to become more frequent. The restriction of current liberal practices with respect to patient visitation in order to reduce the incidence of bystander emotional disturbance claims would be a regrettable social consequence of enlarging the right to recover for emotional disturbances based upon the impact of medical malpractice upon bystanders.
 Another undesirable sequel that is likely to follow upon our creation of a duty to a patient's visitors or relatives is that medical personnel may feel obligated to respond to the usually uninformed complaints of visitors concerning the treatment of patients more for fear of stimulating emotional disturbances upon the part of the visitors than because of the merits of the complaint. Medical judgments as to the appropriate treatment of a patient ought not to be influenced by the concern that a visitor may become upset from observing such treatment or from the failure to follow some notion of the visitor as to care of the patient. The focus of the concern of medical care practitioners should be upon the patient and any diversion of attention or resources to accommodate the sensitivities of others is bound to detract from that devoted to patients.
 Obviously, if the attention of medical practitioners is properly called to some deficiency in the treatment of a patient by anyone, that circumstance may be significant in deciding whether there has been malpractice. It is, however, the consequences to the patient, and not to other persons, of deviations from the appropriate standard of medical care that should be the central concern of medical practitioners. In the case before us, if the defendants should have responded to the various CT Page 6663 requests the plaintiff alleges she made about her mother's condition, they should be held liable for the consequences of their neglect to the patient or her estate rather than to the plaintiff.
 It is a fundamental assumption of jurisprudence that rules of law have an impact on the manner in which society conducts its affairs.
Id., 402-404.
For two reasons, I am persuaded that the rule in Maloney
precluding bystander emotional distress claims arising out of medical malpractice survives Clohessy.
First, it is significant that while Clohessy discussedStrazza v. McKittrick, supra, 146 Conn. 714, Amodio v.Cunningham, supra, 182 Conn. 80, and Maloney v. Conroy, supra,208 Conn. 392, the Clohessy court overruled only Strazza. The Connecticut Supreme Court knows how to overrule more than one case at a time when it chooses to do so. See, e.g., Simms v.Warden, 229 Conn. 178, 640 A.2d 601 (1994); State v. Pinnock,220 Conn. 765, 601 A.2d 521 (1992); Streitweiser v. MiddlesexMutual Assurance Co., 219 Conn. 371, 593 A.2d 498 (1991);Paulsen v. Manson, 203 Conn. 484, 525 A.2d 1315 (1987); Burger Burger, Inc. v. Murren, 202 Conn. 660, 522 A.2d 812 (1987);Foran v. Carangelo, 153 Conn. 356, 216 A.2d 638 (1966); Baurerv. Devenis, 99 Conn. 203, 121 A. 566 (1923). That Maloney was not expressly overruled by Clohessy is especially telling since Maloney is of such recent vintage. Had there been a majority of the Supreme Court in Clohessy in favor of overruling Maloney, I am persuaded that the court would have done so expressly.
Secondly, Maloney is not necessarily inconsistent withClohessy. The language of a court opinion is to be read in context; Woronecki v. Trappe, 228 Conn. 574, 581, 637 A.2d 783
(1994); Matza v. Matza, 226 Conn. 166, 187, 627 A.2d 414
(1993); Scalora v. Dattco, Inc., 39 Conn. Sup. 449, 453
(App. Sess. 1983) (Bieluch, J., with Daly and F. Hennessy, Js.,concurring); and the opinion is to be read as a whole.McGaffin v. Roberts, 193 Conn. 393, 408, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 813
(1985); 21 C.J.S., Courts, § 175. Reading Clohessy and Maloney
in this manner, it is evident that Maloney — without holding CT Page 6664 that there was or was not a cause of action for bystander emotional distress in Connecticut — culled out an exception to such a claim for medically specific policy reasons in the area of medical malpractice. Based on the doctrine of foreseeability, Clohessy held that there was a cause of action for bystander emotional distress in Connecticut, subject to four conditions. "`It is an established rule of law that a later decision overrules prior decisions which conflict withit, whether such prior decisions are mentioned and commented upon or not.' In re Lane, 58 Cal.2d 99, 105, 372 P.2d 897,22 Cal.Rptr. 857 (1962); see Soblen Construction Co. v.Government of the Territory of the Pacific Islands, 526 F. Sup. 135,142 (D.C. Mariana Islands 1981)." (Emphasis added.) Statev. Dukes, 209 Conn. 98, 110, 547 A.2d 10 (1988). Maloney does not conflict with Clohessy. Although it may seem anomalous for an exception to be announced before the general rule is adopted, this is precisely what Maloney did. "A subsequent decision cannot, by mere implication, be held to overrule a prior case unless the principle is directly involved and the inference is clear and compelling." Cole v. Cole, 229 N.C. 757,51 S.E.2d 491, 494-95, 6 A.L.R.2d 1335 (1949). The principle of whether a claim for bystander emotional distress could be asserted in a medical malpractice case was not directly involved in Clohessy and the text of Clohessy does not provide clear and compelling reasons for inferring that that case overruled Maloney[2].
"The opinions of the Supreme Court of Connecticut are binding upon the Superior Court, and the rule of the [Maloney]
case is clear and explicit. Until it is reversed, changed or modified by the Supreme Court, this court must follow it."Montes v. Hartford Hospital, 26 Conn. Sup. 441, 442-443,226 A.2d 798 (1966); see Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 195, 676 A.2d 831 (1996) ("It is axiomatic that a trial court is bound by Supreme Court precedent."). SinceMaloney has not been overruled, the plaintiff may not assert a claim for bystander emotional distress arising out of alleged acts of medical malpractice on her son. For this reason, the motion to strike the third count is granted.
 II
The defendant Goldberg has also moved to strike count five on the ground that a claim of loss of filial consortium is not recognized in Connecticut. The plaintiff maintains that CT Page 6665 such a cause of action has been recognized by a number of superior courts, and thirteen other jurisdictions.
At common law there was no cause of action for damages resulting from the death of a human being. Lucier v.Hittleman, 125 Conn. 635, 636, 7 A.2d 647 (1939). In 1848, Connecticut enacted its first wrongful death statutes. Public Acts 1848, c. 5 §§ 1, 2. Today, the statutory descendant to that early law, General Statutes § 52-555, entitled "Actions for injuries resulting in death," provides: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of." But under this statute, "death and its direct consequences can constitute recoverable elements of damage only if, and to the extent that, they are made so by statute." Foran v. Carangelo,
supra, 153 Conn. 359. In the Foran case, minor children of the decedent brought suit alleging, inter alia, that the defendant's negligence, which caused the death of their mother, caused them to lose her care and affection. The Supreme Court held that such a claim was not within the ambit of § 52-555. The Legislature has not acted to supersede the holding in Foran.
By contrast, after the Supreme Court held in Ladd v.Douglas Trucking Co., 203 Conn. 187, 523 A.2d 1301 (1987), that there could be no recovery under § 52-555 for post-mortem loss of consortium by the spouse of a decedent, the General Assembly enacted Public Acts No. 89-148 §§ 1, 2. Those acts, now codified as General Statutes §§ 52-55a, 52-555b,[3]
recognize that a claim for post-mortem spousal lost of consortium may be asserted and legislatively overruled Ladd.
Since the damages which are compensable as a result of a wrongful death are purely a creation of statute, and since the Legislature has not provided that interference with the parent-child relationship by a wrongful death is compensable, the fifth count must be stricken insofar as it seeks damages CT Page 6666 for the post-mortem loss of filial consortium. See Brodski v.Leicher, Superior Court, Judicial District of Hartford-New Britain at Hartford, No. 546121 (April 26, 1996). Moreover, I agree with the majority of Superior Court decisions which have held that there is no cause of action for loss of filial consortium where serious injury, rather than death, has damaged the parent-child relationship.[4] For this reason, the fifth count is stricken in its entirety.
In conclusion, the defendant Goldberg's motion to strike counts three and five of the plaintiffs' amended complaint is granted.
Bruce L. LevinJudge of the Superior Court